SHARE HEALTH PLAN OF ILLINOIS, INC., Plaintiff-Appellee and Cross-Appellant, v. RUTH ALDERSON, Defendant-Appellant and Cross-Appellee.

First District (2nd Division)    Nos. 1—95—0670, 1—95—0730 cons.

Opinion filed November 26, 1996.—Rehearing denied February 26, 1997.

Stephen B. Diamond, of Beeler, Schad & Diamond, and Edward T. Joyce and Rowena T. Parma, both of Edward T. Joyce & Associates, P.C., both of Chicago, for appellant.

Robert E. Nord, Nancy G. Lischer, and Julie A. Harms, all of Hinshaw & Culbertson, of Chicago, for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Share Health Plan of Illinois (Share) brought this action for reimbursement of medical expenses that it paid on behalf of Ruth Alderson after she was injured by third parties. Alderson received from the third-party tortfeasors a general, nonitemized settlement payment, from which Share requested reimbursement of paid medical expenses. The circuit court granted Share's motion for summary judgment. On Alderson's motion for reconsideration, the court reduced the judgment award by a *pro rata* amount of attorney fees paid by Alderson in pursuance of her tort settlement. Alderson appeals the order of summary judgment, and Share appeals the order reducing the judgment. For the following reasons, we affirm both the grant of summary judgment and the order reducing the judgment.[1]

Share is a health maintenance organization (HMO) that contracts with the United States Health Care Financing Administration (HCFA) to provide and administer Medicare benefits through its SeniorCare program. In 1985, Share accepted Alderson's application for membership in the SeniorCare plan and issued her a subscription certificate and a member handbook.

On July 7, 1988, Alderson suffered severe injuries when a 2,000-pound compressor detached from a truck and pinned her against a

---

[1]Share's action was consolidated with a class action complaint that Alderson filed against it in the chancery division. The class has been certified, and the action is currently pending.

wall. She incurred expenses of $68,835.85 for "medical specials." Share paid $21,317.35 of those medical specials, $14,110 of which was in satisfaction of a $42,220.25 bill owed to Northwestern Memorial Hospital. That hospital accepted Share's partial payment in full satisfaction of Alderson's bill in compliance with federal Medicare regulations that limit charges to Medicare or HMOs providing Medicare benefits.

Alderson filed a personal injury lawsuit against the third-party tortfeasors alleging that she sustained permanent injuries causing considerable pain and suffering, in the past and to be expected in the future, and permanent disability. She also alleged the loss of earnings and wages and the payment of medical, surgical, and hospital expenses. In that action, Alderson filed a pretrial memorandum itemizing $68,835.85 of "medical specials" that she incurred. In November 1990, Alderson settled the lawsuit and received a general, nonitemized payment of $700,000.

Share subsequently sought reimbursement from Alderson for the medical expenses it had paid. The parties entered into negotiations. On November 14, 1990, Share sent Alderson a letter agreeing to accept $20,727.10 in settlement of its claim. In response, Alderson's attorney wrote that payment would be withheld until Share provided cancelled checks of its payments to medical providers. Share forwarded copies of the cancelled checks to Alderson, but received no payment.

On November 26, 1990, Alderson and her attorney filed a "settlement breakdown sheet" in the personal injury action. The sheet listed a lien to "Share HRI" for $20,727.10.

On September 12, 1991, Share filed this action, requesting $49,143.35 for the "reasonable value" of the medical expenses it paid. On October 22, 1991, Alderson filed its class action alleging that Share engaged in the improper practice of seeking reimbursement of medical expenses (1) in excess of the amounts actually paid to providers and (2) from nonitemized settlements received by its members from third-party tortfeasors. In December 1992, Share filed an amended complaint lowering its request to $20,727.10.

On October 19, 1994, the circuit court granted Share's motion for summary judgment and awarded it $20,727.10. On January 18, 1995, the court granted Alderson's motion for reconsideration and reduced the judgment to $13,824.98 to reflect Share's *pro rata* portion of attorney fees incurred by Alderson to obtain the $700,000 settlement.

Share contends that it is entitled to summary judgment because it has a right to reimbursement as a secondary Medicare payer. Alderson responds that Medicare regulations required Share to prove that medical expenses were contained in the settlement she received.

■ Orders of summary judgment are reviewed *de novo* to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992).

■ Under the Medicare Secondary Payer provisions of the Social Security Act (42 U.S.C. § 1395 *et seq.* (1994)), a Medicare provider is required to serve as a secondary payer when a Medicare beneficiary can expect payment under another insurance plan. 42 U.S.C. § 1395y(b)(2) (1994). As a secondary Medicare payer, any payments that it makes on behalf of the beneficiary are conditioned on reimbursement. 42 U.S.C. § 1395y(b)(2)(B)(i) (1994). A conditional payment, which may be made where Medicare benefits are claimed for the treatment of injury caused by a third party, has been interpreted by the Secretary of Health and Human Services (the Secretary) in the Code of Federal Regulations (the Code) to be one for services for which another payer is responsible. 42 C.F.R. §§ 411.52, 411.21 (1996).

The general provisions of the current Code provide that where a conditional payment is made and the beneficiary recovers from the primary payer, the HCFA may recover the "lesser of the *** amount of the Medicare primary payment *** [or] the amount of the third party payment." 42 C.F.R. § 411.24(c) (1996). The predecessor of the current provision, which similarly provided that the HCFA "may recover an amount equal to the Medicare payment or the amount payable to the third-party, whichever is less," was interpreted to allow full recovery of conditional Medicare payments, "even when the beneficiary's settlement is for less than her total damages." *Zinman v. Shalala*, 67 F.3d 841, 843 (9th Cir. 1995). In *Zinman*, the court rejected the argument that Medicare's right to recover was limited to the extent that a beneficiary's settlement actually covered the services for which Medicare paid. *Zinman*, 67 F.3d at 844.

Further, the Medicare Carriers Manual (the Manual) provides that the entire amount of a settlement is subject to recovery by Medicare, "regardless of how amounts may be designated." United States Department of Health and Human Services, Health Care Financing Administration, Medicare, Part B, Carriers Manual § 3340.6 (April 1988). The provisions of the Manual are considered to be "valid interpretative rules, appropriately promulgated by the Secretary under the authority of 42 U.S.C. § 1395 x(s)(7)." *Keefe v. Shalala*, 71 F.3d 1060, 1065 (2d Cir. 1995). As "an agency's construction of its own regulations," the provisions of the Manual are accorded "substantial deference." *Keefe*, 71 F.3d at 1065, quoting *Lyng v. Payne*, 476 U.S. 926, 939, 90 L. Ed. 2d 921, 934, 106 S. Ct. 2333, 2341 (1986).

■ Thus, read together, the Medicare Secondary Payer statute, the Manual, and *Keefe* dictate that the HCFA can recover the entire amount of, but not more than, a third-party payment or settlement, regardless of whether and how amounts are designated. In other words, if Medicare were to pay $75,000 in benefits and the beneficiary were to receive a nonitemized settlement of $50,000, Medicare would be entitled to recover the total amount of the settlement.

This conclusion is in accord with the Medicare and Medicaid Guide published by Commerce Clearing House. That document provides:

"In general, Medicare policy requires recovering payments from liability awards or settlements, where the settlement arises from a personal injury action or a survivor action, without regard to how the settlement agreement stipulates disbursement should be made. That includes situations in which the settlements do not expressly include damages for medical expenses. Since liability payments are usually based on the injured or deceased person's medical expenses, liability payments are considered to have been made 'with respect to' medical services related to the injury even when the settlement does not expressly include an amount for medical expenses." Commerce Clearing House, Medicare and Medicaid Guide, par. 4142, at 1372 (1995).

The foregoing applies to recovery by HCFA and does not directly resolve the issue presented here. In this case, Share relies for recovery on a different section of the Code, one that specifically relates to HMOs. That section provides in relevant part:

"If a Medicare enrollee receives from an HMO or CMP covered services that are also covered under *** any liability insurance policy or plan, *** the HMO or CMP may charge ***
***
(2) The Medicare enrollee, to the extent that he or she has been paid by the carrier, employer, or other entity." 42 C.F.R. § 417.528(b)(2) (1995).

In light of our conclusion that Medicare may recover the entire amount of a settlement, regardless of how damages are apportioned, we reject Alderson's contention that "to the extent that he or she has been paid" means that Share can recover only that portion of the settlement which was specifically designated to it. Rather, we read the "to the extent" phrase quoted above to mean that Share, which was acting under contract to the HCFA, may recover up to the amount of settlement, but not more. We decline to hold otherwise because doing so would be inconsistent with the overall scheme of the Medicare Secondary Payer statute.

Alderson contends that even if Share has the right to recover

payment under Medicare regulations, that right is limited because Share provides HMO coverage that pays benefits in excess of Medicare coverage. Based upon an advertisement, she asserts that there is a genuine issue of material fact as to whether Share is seeking reimbursement for expenses paid in excess of Medicare coverage. Because we find no indication in the record that the payments here in fact exceeded Medicare coverage, we reject her contention.

Accordingly, we conclude that Share is entitled to reimbursement for payments it made in satisfaction of Alderson's medical bills, without having to prove that the medical expenses were indeed covered by the third-party tortfeasors. Because we conclude that Share has a right to reimbursement as a secondary payer of Medicare benefits, we need not address its other grounds for summary judgment.

We turn to the question of whether Share is entitled to the full $20,727.10 that it demanded. Share contends that the circuit court erred in reducing the judgment to reflect its *pro rata* portion of Alderson's attorney fees in the tort action. Alderson replies that Share is accountable for attorney fees under the common fund doctrine.

■ Under Medicare regulations, the general rule for recovery of Medicare payments from a beneficiary is that Medicare reduces its recovery to take account of the beneficiary's cost of procuring the settlement. 42 C.F.R. § 411.37(a)(1) (1995). There is a "special rule," however, that provides that "[i]f HCFA must bring suit against the party that received payment because that party opposes HCFA's recovery, the recovery amount is the lower of" the Medicare payment or the total settlement minus the party's total costs. 42 C.F.R. § 411.37(e) (1995).

■ Here, Share contends that the special rule applies because Alderson opposed Share's recovery and Share was required to file suit to recover its payments. Share, however, cites no authority for the proposition that the special rule applies to a Medicare payer other than HCFA. Because the Medicare Secondary Payer statute grants HCFA procedural recovery rights not provided to all Medicare payers (see, *e.g.*, 42 U.S.C. § 1395(b)(2)(B)(iii) (1994) (providing subrogation rights for the United States)), absent a provision expressly applying to HMOs, we decline to depart from the explicit terms of the statute. The special rule is unavailable to Share.

■ As for whether Share is liable under the common fund doctrine, in Illinois, the doctrine permits a party to be reimbursed for attorney fees incurred in creating a common fund for the benefit of persons other than the attorney or his or her client. *Scholtens v. Schneider*, 173 Ill. 2d 375, 385 (1996). That equitable doctrine requires

that the beneficiary pay its fair share of the costs of litigation. *Wolf v. Ampacet Corp.*, 284 Ill. App. 3d 597, 605 (1996). The underlying rationale is that unless the costs of litigation are proportionally spread to the beneficiary, it will be unjustly enriched. *Scholtens*, 173 Ill. 2d at 385. Here, Alderson incurred attorney fees to obtain the settlement from which Share now benefits. Accordingly, the circuit court properly reduced the judgment to $13,824.98 to reflect Share's *pro rata* portion of attorney fees incurred by Alderson to obtain the $700,000 settlement.

The grant of summary judgment and the order reducing Share's award are affirmed.

Affirmed.

HARTMAN, P.J., and SCARIANO, J., concur.