RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0162P (6th Cir.)
File Name: 03a0162p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

CARE CHOICES HMO,
    *Plaintiff-Appellant/*
    *Cross-Appellee,*

    *v.*

ELIZABETH ENGSTROM,
    *Defendant-Appellee/*
    *Cross-Appellant.*

Nos. 01-2682/2717

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-71792—Victoria A. Roberts, District Judge.

Argued: May 8, 2003

Decided and Filed: May 30, 2003

Before: KENNEDY, SILER, and GILMAN, Circuit
Judges.

———————————

**COUNSEL**

**ARGUED:** Graham K. Crabtree, FRASER, TREBILCOCK,
DAVIS & DUNLAP, Lansing, Michigan, for Appellant.
Charles Gottlieb, GOTTLIEB & GOREN, Bingham Farms,
Michigan, for Appellee. **ON BRIEF:** Graham K. Crabtree,

Thaddeus E. Morgan, FRASER, TREBILCOCK, DAVIS &
DUNLAP, Lansing, Michigan, for Appellant. Charles
Gottlieb, GOTTLIEB & GOREN, Bingham Farms, Michigan,
for Appellee.

———————————

**OPINION**

———————————

KENNEDY, Circuit Judge.

## I.

Over the last two decades, Congress has struggled to reduce
the cost of the Medicare program. One effort in this struggle
is 42 U.S.C. § 1395mm, which permits the Center for
Medicare and Medicaid Services ("CMS"),[1] the administrator
of Medicare, to contract with private health maintenance
organizations ("HMOs") to provide replacement coverage for
Medicare-eligible individuals.

Plaintiff Care Choices HMO is licensed by CMS to provide
replacement Medicare coverage. Defendant Elizabeth
Engstrom is a Medicare-eligible insured covered by Care
Choices HMO. In 1998, Engstrom slipped and fell in a
supermarket, sustaining serious injuries. Care Choices HMO
paid $56,745.19 in health care expenses resulting from
Engstrom's injuries. Engstrom brought a personal injury
lawsuit against the supermarket, which she settled for
$105,000. That settlement award was paid by the
supermarket's third-party liability insurer.

On May 8, 2001, Care Choices HMO filed suit in federal
district court seeking a declaration that it was entitled to
recoup the medical expenses it had paid out of the settlement

———————————

[1]CMS was previously known by the title Health Care Financing
Administration ("HCFA").

money.[2] Care Choices HMO argues that it has a private right of action under 42 U.S.C. § 1395mm(e)(4), which provides that Medicare-substitute HMOs are permitted to seek reimbursement when an insured receives benefits from another source of insurance. The statute is silent as to an HMO's remedies for obtaining reimbursement.

The district court granted Engstrom's motion to dismiss based on lack of subject matter jurisdiction. *Care Choices HMO v. Engstrom*, 170 F. Supp. 2d 741 (E.D. Mich. 2001). We are asked in this case to decide whether 42 U.S.C. § 1395mm(e)(4) contains an implied private right of action in federal court for Medicare-substitute HMOs.[3] We hold that it does not, and affirm the district court's decision.

---

[2]Care Choices also pursued a contractual right to reimbursement in state court. The Summary Plan Description contained in Engstrom's policy provides that "if you [the insured] collect money from a third party because of an ailment, injury, or disease, the money must be applied to your Care Choices Senior healthcare expenses. It doesn't matter if the money results from a legal action or settlement." On January 18, 2001, Care Choices HMO filed a Notice of Contractual Lien in Michigan state court, seeking reimbursement out of the settlement award for the expenses it paid as a result of Engstrom's injuries. On April 27, 2001, Engstrom filed a motion to void or discharge the lien claim. On May 11, 2001, the state court granted that motion, concluding that (1) Engstrom owed no money to Care Choices HMO, and (2) Care Choices HMO is not entitled to a lien against Engstrom's recovery from the supermarket. Because the existence of subject matter jurisdiction in federal court turns on the question of whether Care Choices has a valid claim under 42 U.S.C. § 1395, we need not reach any of the issues pertaining to its asserted contract claim.

[3]Care Choices also asserts that 42 C.F.R. § 417.528(b) provides a federal cause of action for enforcing its right to reimbursement. Even if we agreed that congressional intent to create a cause of action could be expressed via action taken by an executive agency pursuant to properly delegated regulatory authority, the language of this particular regulation does not provide any additional support for implying a private right of action beyond what is contained in § 1395mm(e)(4) itself.

## II.

We review the district court's decision regarding subject matter jurisdiction *de novo*. *American Fed'n of State, County, and Mun. Employees Local 506 v. Private Indus. Council of Trumbull County*, 942 F.2d 376, 378 (6th Cir. 1991).

The statute at issue in this case, 42 U.S.C. § 1395mm(e)(4), provides that:

Notwithstanding any other provision of law, the eligible organization may (in the case of the provision of services to a member enrolled under this section for an illness or injury for which the member is entitled to benefits under a workman's compensation law or plan of the United States or a State, under an automobile or liability insurance policy or plan, including a self-insured plan, or under no-fault insurance) charge or authorize the provider of such services to charge, in accordance with the charges allowed under such law or policy –

(A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or

(B) such member, to the extent that the member has been paid under such law, plan, or policy for such services.

Absent an express private right of action, federal courts may in certain circumstances find an implied right of action. In *Cort v. Ash*, 422 U.S. 66, 78 (1975), the Supreme Court outlined four factors to consider when determining the existence of an implied statutory cause of action:

First, is the plaintiff one of the class for whose especial benefit the statute was enacted, that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the

legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

The "central inquiry" is "whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979). The Supreme Court has admonished, however, that implying a private right of action "is a hazardous enterprise, at best." *Id*. at 571.

HMOs are an intended beneficiary of 42 U.S.C. § 1395mm(e)(4). The plain language of this statutory provision establishes that HMOs may obtain reimbursement where the beneficiary is eligible for coverage under some other insurance policy.[4] This fact alone, however, is not sufficient to imply a private right of action. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (noting that the statute must manifest an intent "to create not just a private right but also a private remedy."); *California v. Sierra Club*, 451 U.S. 287, 294 (1981) ("The question is not simply who would benefit from the Act, but whether Congress intended to confer

---

[4]In holding otherwise, the district court focused on other provisions in the same bill, at the expense of the particular provision relevant to this dispute. The bill within which § 1395mm(e)(4) was enacted, the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, states, in a rather unenlightening manner, that its purpose is "[t]o provide for tax equity and fiscal responsibility and for other purposes." The law contains a myriad of miscellaneous provisions dealing with AFDC, Social Security, unemployment compensation, and a wide range of tax code issues. The breadth of the law defies a single, coherent purpose. Although it may be accurate to say that on the whole TEFRA has a primarily fiscal or regulatory purpose, those purposes do not provide any insight as to congressional intent in enacting § 1395mm(e)(4), which may very well have been for one of the unspecified "other purposes" mentioned by the 97th Congress.

federal rights upon those beneficiaries."). There is no evidence here that Congress intended to create an affirmative right to reimbursement that is enforceable in federal court. Reading the statute as a whole, it is clear that §1395mm(e)(4) is intended to permit Medicare-substitute HMOs to create a right of reimbursement for themselves in the context of their own insurance agreements with Medicare beneficiaries. The statute does not confer any affirmative rights to reimbursement, much less contain an implied private right of action.[5]

1. The Purposes and Structure of § 1395mm

The legislative history of this statutory provision neither provides any support for implying a private right of action, nor provides any definitive indication of congressional intent to withhold such a right. Section 1395mm(e)(4) was enacted in the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248. This law is a grab-bag of fiscal and regulatory reform, and the extensive congressional debate focused primarily on its tax provisions. Certain of its Medicare reforms were debated specifically, but not § 1395mm(e)(4). There is no smoking gun from the legislative history to guide our analysis under *Cort v. Ash.*

The legislative scheme of this Medicare statute, however, provides convincing evidence that § 1395mm(e)(4) should not be interpreted to contain a private right of action. The entirety of § 1395mm is aimed at creating preconditions for and regulating the behavior of HMOs that substitute for Medicare. The lengthy statute lists the eligibility requirements for participating organizations and heavily regulates how much

---

[5]The two cases in which courts have assumed without deciding that a private right of action exists for HMOs, *Humana Medical Plan, Inc. v. Valdez*, 25 F. Supp. 2d 1347 (M.D. Fla. 1997), and *Share Health Plan of Illinois, Inc. v. Alderson*, 285 Ill. App. 3d 489 (Ill. App. 1996), do not apply the *Cort v. Ash* factors to § 1395mm(e)(4), and so neither case provides any guidance or persuasive authority.

they get paid by Medicare, their duties to beneficiaries, the type of services they may provide, the composition of their membership pool, and the composition of their insurance contracts. *See* 42 U.S.C. § 1395mm(a)-(i). The subdivision within which the alleged implied private right of action is located, § 1395mm(e), regulates the premiums Medicare-substitute HMOs may charge to beneficiaries. Placing § 1395mm(e)(4) in this context makes it clear that it is intended to explain what Medicare-substitute HMOs are still permitted to do – namely, include a provision in their own policies making them a secondary insurer – and is not intended to create an affirmative right to collect from other sources of insurance via an action in federal court. If an HMO chooses to include such a provision in its insurance policy, its remedy would be based on a standard insurance contract claim and not on any federal statutory right. Our conclusion is bolstered by the fact that Care Choices HMO has this widely recognized alternative avenue for enforcement.

2.  Comparison to the Medicare Secondary Payer Statute

The Medicare Secondary Payer ("MSP") statute, 42 U.S.C. § 1395y(b), mandates that Medicare will generally be the secondary insurer where other insurance coverage is available to the beneficiary. Like § 1395mm, this legislation emerged from congressional efforts to reduce the costs of the Medicare program. Initially, the statute did not contain an express provision for enforcing Medicare's right to reimbursement from primary insurers. Congress subsequently amended § 1395y to include an express right of recovery. 42 U.S.C. § 1395y(b)(2)(B).

The comparison between the MSP reimbursement provisions and the HMO-related provision of § 1395mm(e)(4) provides some additional evidence that Congress did not intend to imply a private right of action in the latter statute. Where the HMO provision uses permissive language (i.e., the HMO "may" obtain reimbursement), the MSP provision uses

mandatory language (i.e., Medicare payments "shall" be conditioned on reimbursement by the primary insurer). This is a fairly clear indication that Congress intended the Medicare program to have more extensive rights than Medicare-substitute HMOs.[6]

We disagree, however, with the district court's inference that the fact that Congress explicitly chose to grant the remedy to the government indicates an intent to withhold it from HMOs. The fact that Congress granted an express remedy to Medicare may, but does not necessarily, demonstrate that they considered and rejected such a remedy for HMOs. The express remedy provided to Medicare was created in a different statutory provision, in a different bill, passed by a different Congress. It might just as well be the result of oversight or failure to consider such a remedy at all.

Similarly, the existence of § 1395y(b)'s express remedial provisions may, but does not necessarily, indicate that implied remedies are inappropriate in this context. At least one court has held that the pre-amendment MSP provision did contain an implied cause of action for Medicare to collect from primary insurers. *See United States v. Blue Cross and Blue Shield of Michigan*, 726 F. Supp. 1517 (E.D. Mich. 1989). Although it might be true that Congress passed § 1395y(b) in order to create a remedy where none existed, it might also be true that Congress passed § 1395y(b) in order to more precisely define the contours of Medicare's legal remedy. Thus, Congress' failure to include an express remedy for HMOs could be interpreted as satisfaction with leaving the remedy for those insurers to their contractual remedies in state court.

---

[6]This distinction also may explain the district court's reasoning in *United States v. Blue Cross and Blue Shield of Michigan*, 726 F. Supp. 1517 (E.D. Mich. 1989), which held that the pre-amendment MSP statute did contain an implied cause of action for Medicare to recover payments made on behalf of primary insurers.

The district court relied on *Touche Ross*, 442 U.S. at 572, in which the Supreme Court held that where an express remedy is "by its terms limited" to particular parties, "we are extremely reluctant to imply a cause of action . . . that is significantly broader than the remedy Congress chose to provide." This is inapposite to this case, since Care Choices HMO is not asking us to imply a remedy for them based on the express remedy permitted for Medicare in the MSP statute.[7]

In short, although the district court's reasoning reads a little too much into the comparison with the MSP provisions, the regulatory nature of § 1395mm, coupled with the absence of any affirmative evidence that Congress intended to imply a private right of action, makes it clear that § 1395mm(e)(4) does not establish a federal right of action to seek reimbursement for benefits conferred by another insurer.

For the forgoing reasons, we AFFIRM the district court's order dismissing the cause of action for lack of subject matter jurisdiction. Furthermore, having been presented with no record evidence in support of her claim, we DENY Appellee/Cross-Appellant Engstrom's appeal of the district court's determination that her motion for sanctions under Fed. R. Civ. P. 11 was untimely.

---

[7]In essence, Care Choices HMO is asking this court to create a federal right to reimbursement because it may have lost its opportunity to litigate its contractual claim in state court. The "Coordination of Benefits" provision of Engstom's health insurance policy states that: "If automobile or no-fault or liability insurance is available to you, then benefits under than plan must be used first. Where a judgment or settlement is made with a liability insurer, Care Choices Senior's reimbursement may be reduced by a pro rata share procurement cost . . . . Remember, if you collect money from a third party because of an ailment, injury or disease, the money must be applied to your Care Choices Senior health care expenses. It doesn't matter if the money results from a legal action or a settlement." Although this provision would appear to give Care Choices HMO the power to obtain reimbursement, the state court's dismissal of Care Choices HMO's Notice of Contractual Lien creates a potential *res judicata* problem.