**Arlene NOTT, on behalf of herself and all others similarly situated,**

v.

**AETNA U.S. HEALTHCARE, INC.**

**Civil Action No. 03–CV–4044.**

United States District Court, E.D. Pennsylvania.

Jan. 23, 2004.

Ronald J. Smolow, Smolow & Landis, Trevose, PA, for Plaintiff.

Raymond A. Quaglia, Ballard, Spahr, Andrews & Ingersoll, LLP, Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

SAVAGE, District Judge.

In this putative class action removed from the state court, the plaintiff challenges defendant Aetna U.S. Healthcare, Inc.'s ("Aetna") right to enforce its contractual subrogation claim against plaintiff's tort recovery, contending that it violates the Pennsylvania Motor Vehicle Financial Responsibility Law's ("MVFRL") bar against subrogation. Aetna argues that the action is completely preempted because it arises under the Medicare Act, which permits private Medicare-substitute HMO insurance carriers to recoup medical expenses paid on behalf of an insured who later recovers those expenses from another source. In requesting remand, the plaintiff asserts that her complaint raises only state based claims and does not present any federal cause of action giving rise to federal question removal jurisdiction. In short, contrary to the defendant's position, the plaintiff maintains that her state court action is not completely preempted by federal law and, hence, was improperly removed.

At the heart of the case is the collision of two statutes, one federal and the other

state. The Medicare Act allows a health insurer providing replacement coverage for Medicare-eligible persons to include in its insurance contract a right of subrogation against an insured's recovery from a third party for money previously paid for the insured's medical care. 42 U.S.C. §§ 1395w–22(a)(4), 1395mm(e)(4). In direct conflict with the federal statute, the Pennsylvania Motor Vehicle Financial Responsibility Law prohibits subrogation from an insured's recovery from a tortfeasor in a motor vehicle accident case. 75 PA. CONS.STAT. § 1720.

Our task is not to decide which statute will ultimately prevail. Rather, we must determine whether the federal or the state court has jurisdiction to resolve the conflict between the two statutes. Stated differently, we must decide whether the federal statute, the Medicare Act, completely preempts the state statute, the MVFRL, depriving the state court of jurisdiction. Thus, our inquiry is focused on jurisdiction and not on the merits of the plaintiff's claim.

We conclude that the Medicare Act does not completely preempt the plaintiff's state causes of action. Therefore, we shall remand this case to the state court for resolution of the statutory conflict, a task it is competent to perform.

## I. Background

Under its "Golden Medicare Plan," Aetna paid a portion of Arlene Nott's ("Nott") medical costs for treatment of injuries she had sustained in a motor vehicle accident. After Nott settled her personal injury claim against the tortfeasor, Aetna asserted a subrogation lien against her tort re-

covery, seeking reimbursement of the medical expenses it had previously paid. Aetna's insurance contract gave it "the right to repayment of the full costs of all benefits provided by HMO on behalf of the Member that are associated with the injury or illness for which the third party is or may be responsible," which includes "payments made by a third-party tortfeasor or any insurance company on behalf of the third-party tortfeasor." Notice of Removal, Exh. A (Compl. Exh. A ("Evidence of Coverage"), at 53). Aetna later released the lien in consideration of Nott's $1,000 payment.

Nott then filed this action in the Pennsylvania Court of Common Pleas for Bucks County.[1] Alleging various state law causes of action against Aetna, Nott seeks the recovery of money paid to Aetna to satisfy its subrogation lien, a permanent injunction enjoining Aetna from placing subrogation liens on its insureds' third party motor vehicle accident recoveries, and a declaratory judgment declaring all pending subrogation liens void and unenforceable. Aetna removed this action under 28 U.S.C. § 1441, and then filed a motion to dismiss based on preemption grounds. Nott seeks remand.

## II. The Statutes in Conflict

The competing statutes are in direct conflict. The federal law permits Aetna to recoup medical expenses from an insured's third party recovery. The state law prohibits such recoupment in motor vehicle accident cases. Both sections of the Medicare Act cited by Aetna, 42 U.S.C. §§ 1395w–22(a)(4) and 1395 mm(e)(4),[2] au-

---

**1.** Plaintiff seeks to represent a class of persons defined as "[a]ll persons covered by an Aetna healthcare Policy, who were involved in a motor vehicle accident in the Commonwealth of Pennsylvania, and Aetna asserted a Lien ... against the insured's tort recovery

... [during the] four (4) years prior to the filing of this action and continues to the date of judgment ...." Notice of Removal, Exh. A (State Court Compl.), ¶ 16, at 4.

**2.** 42 U.S.C. § 1395mm(e)(4) states that:

thorize, but do not require, a Medicare HMO insurer to include in its contract a provision for reimbursement of money paid on behalf of its insured from the insured's recovery under another insurance policy or plan, including an automobile or liability insurance plan. Under the Pennsylvania MVFRL, 75 Pa. Cons.Stat. § 1720, insurance companies may not subrogate against recoveries in claims arising out of motor vehicle accidents.[3]

### III. Removal and Preemption

■ The removal inquiry begins with the well-pleaded complaint rule. *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350, 353–54 (3d Cir.1995). A federal court does not have subject matter jurisdiction over a case removed from state court unless an issue of federal law appears on the face of the plaintiff's properly pleaded state court complaint. *Metro. Life Ins. Co.,* 481 U.S. at 63, 107 S.Ct. 1542; *In re U.S. Healthcare, Inc.,* 193 F.3d 151, 160 (3d Cir.1999).

■ A narrow exception to the well-pleaded complaint rule is the doctrine of complete preemption, which transforms state law causes of action into exclusively federal claims because Congress intended that the statute completely supplant all state law causes of action. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Metro. Life Ins. Co.,* 481 U.S. at 63–66, 107 S.Ct. 1542; *In re U.S. Healthcare, Inc.,* 193 F.3d at 160. Accordingly, regardless of a plaintiff's asserting only causes of action under state law in her complaint, any claim based on the preempted state law is considered a federal claim arising under federal law. *Caterpillar, Inc.,* 482 U.S. at 393, 107 S.Ct. 2425.[4]

Notwithstanding any other provision of law, the eligible organization may (in the case of the provision of services to a member enrolled under this section for an illness or injury for which the member is entitled to benefits under a workmen's compensation law or plan of the United States or a State, under an automobile or liability insurance policy or plan, including a self-insured plan, or under no fault insurance) charge or authorize the provider of such services to charge, in accordance with the charges allowed under such law or policy—

(A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or

(B) such member to the extent that the member has been paid under such law, plan, or policy for such services.

42 U.S.C. § 1395w–22(a)(4) states that:

Notwithstanding any other provision of law, a Medicare + Choice organization may (in the case of the provision of items and services to an individual under a Medicare + Choice plan under circumstances in which payment under this title is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—

(A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or

(B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

3. 75 Pa. Cons.Stat. § 1720 states that:

In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits paid or payable by a program, group contact or other arrangement whether primary or excess under 1719 (relating to coordination of benefits).

4. The Supreme Court has found that complete preemption exists in only a few limited instances: usury actions against National Banks under 12 U.S.C. §§ 85, 86 (National

The complete preemption doctrine is stringently applied. *Ry. Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co.*, 858 F.2d 936, 942 (3d Cir. 1988). Even if federal preemption is the only real issue in the case, there is no jurisdiction unless the preemption is complete. *Caterpillar, Inc.*, 482 U.S. at 393, 107 S.Ct. 2425; *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 12–14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Gully v. First Nat'l Bank*, 299 U.S. 109, 113, 116, 57 S.Ct. 96, 81 L.Ed. 70 (1936). The fact that a state law cause of action requires reference to federal law is insufficient to establish complete preemption. *Smith v. Indus. Valley Title Ins. Co.*, 957 F.2d 90, 93 (3d Cir.1992). "[A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Caterpillar, Inc.*, 482 U.S. at 399, 107 S.Ct. 2425; *see also Dukes*, 57 F.3d at 353–54; *Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 310 n. 6 (3d Cir.1994). Hence, absent complete preemption, the fact that a defendant may eventually prove that the plaintiff's claims are preempted under federal law does not mean that they are removable. *Caterpillar, Inc.*, 482 U.S. at 391, 107 S.Ct. 2425; *Gully*, 299 U.S. at 116–17, 57 S.Ct. 96; *Ry. Labor Executives Ass'n*, 858 F.2d at 940 (citing *Franchise Tax Bd.*, 463 U.S. at 26, 103 S.Ct. 2841).

Conflict preemption is not synonymous with complete preemption.[5] *Ry. Labor Executives Ass'n*, 858 F.2d at 939–41. Conflict preemption, unlike complete preemption, does not confer federal jurisdiction. Conflict preemption occurs when a federal affirmative defense to a state law claim is asserted. It is not a basis for removal. "Conflict preemption, also known as ordinary preemption, arises when a federal law conflicts with state law, thus providing a federal defense to a state law claim, but does not completely preempt the field of state law so as to transform a state law claim into a federal claim." *Arana v. Ochsner Health Plan*, 338 F.3d 433, 439 (5th Cir.2003); *see also Krashna v. Oliver Realty, Inc.*, 895 F.2d 111, 114 n. 3 (3d Cir.1990).

Whether plaintiff's state law causes of action are preempted by operation of federal law under an ordinary conflict preemption analysis can be addressed by the state court. "State courts are competent to determine whether state law has been preempted by federal law and they must be permitted to perform that function in cases brought before them, absent a Congressional intent to the contrary." *Ry. Labor Executives Ass'n*, 858 F.2d at 942.

---

Bank Act), *see Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003); actions arising out of nuclear incidents as expressly provided for in 42 U.S.C. § 2014(hh) (Price–Anderson Act), *see El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999); actions under 29 U.S.C. § 1132(a) (section 502(a) of ERISA), *see Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); possessory land claims brought by Indian Tribes, *see Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974); and certain

actions arising under 29 U.S.C. § 185 (section 301 of the LMRA), *see Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). None of these statutes are at issue here.

5. For discussions of the distinction between complete and ordinary preemption, see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) and *In re U.S. Healthcare*, 193 F.3d 151, 160 (3d Cir. 1999).

■ Before the extraordinary force of complete preemption can apply, two elements must exist: (1) the state law cause of action must be covered by the civil enforcement scheme created by the federal statute; and (2) Congress must have clearly intended that the federal statute would preempt all state law causes of action, thus permitting removal even when the plaintiff's complaint relies exclusively on state law. *Goepel*, 36 F.3d at 311; *Allstate Ins. Co. v. 65 Sec. Plan*, 879 F.2d 90, 93 (3d Cir.1989). If either element is absent, complete preemption does not apply and federal removal jurisdiction is lacking.

## IV. The Medicare Act and Complete Preemption

If Nott's state law claims are completely preempted by operation of the Medicare Act, they are deemed federal and automatically recast as federal causes of action. *Metro. Life Ins. Co.*, 481 U.S. at 63–64, 107 S.Ct. 1542; *In re U.S. Healthcare, Inc.*, 193 F.3d at 160. Therefore, keeping in mind that ordinary conflict preemption alone cannot support federal question removal, we shall examine the pertinent provisions of the Medicare Act to determine whether they completely preempt the state court action.[6]

## A. Absence of Civil Enforcement Scheme

■ An analysis of the language of the two statutory provisions cited by the defendant, sections 1395w–22(a)(4) and 1395mm(e)(4), reveals that Congress did not create a federal scheme under the Medicare Act for the civil enforcement of a Medicare-substitute HMO's subrogation rights arising out of its own contract. Rather, the Act merely permits HMOs to include a right of subrogation in their own contracts with Medicare beneficiaries.

A comparison between the language of sections 1395w–22(a)(4) and 1395mm(e)(4) with the language of section 1395y(b)(2)(B)(ii), which is not implicated in this case,[7] also demonstrates the absence of a civil enforcement scheme in the sections Aetna claims completely preempt plaintiff's state law claims. Section 1395y(b)(2)(B)(ii) states that: In order to recover payment under this subchapter for such an item or service, the United States may bring an action against any entity which is required or responsible (directly, as a third-party administrator, or otherwise) to make payment with respect to such item or service (or any portion thereof) under a primary plan ... or against any other entity (including any physician

6. Aetna contends that Nott's claims "arise under" federal law because they are "inextricably intertwined" with a claim for payment of Medicare benefits. *Aetna's Brief in Opposition to Plaintiff's Motion for Remand ("Brief in Opposition")*, at 3 (citing *Heckler v. Ringer*, 466 U.S. 602, 614–17, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984)). According to Aetna, this nexus provides an independent basis for the exercise of federal jurisdiction, and we need not address the issue of complete preemption. *Brief in Opposition*, at 3.

To "arise under" the federal statute for removal purposes, the state complaint must come within the scope of the federal cause of action created by the statute. *Ry. Labor Executives Ass'n*, 858 F.2d at 939. This principle presupposes the existence of a federal cause of action. As we discuss in this section, no such action in favor of private HMOs was created by Congress in the Medicare Act. Aetna's argument notwithstanding, we must evaluate the issue of complete preemption because it is the only exception to the well-pleaded complaint rule and, thus, the only ground for exercising removal jurisdiction in this case.

7. 42 U.S.C. § 1395y(b) governs the government's right to reimbursement through an express cause of action in order to recover Medicare payments it previously made. The payments at issue in this case were made by a private insurer.

or provider) that has received payment from that entity with respect to the item or service . . . . Thus, section 1395y(b)(2)(B)(ii) explicitly provides that the United States may institute a civil action to recoup Medicare payments it made.

There is no similar provision creating a cause of action that HMOs can use to pursue their private contract rights. In the removal context, the absence of an express remedial provision, like the one created by 1395y(b)(2)(B)(ii), defeats any complete preemption argument. Consequently, we conclude that while granting statutory permission to include recovery provisions in their contracts, Congress did not create a mechanism for the private enforcement of subrogation rights of Medicare substitute HMOs.

Recently, in a case factually similar to the one before us, the Sixth Circuit held that section 1395mm(e)(4) does not provide a private right of action. *Care Choices HMO v. Engstrom*, 330 F.3d 786, 791 (6th Cir.2003). Plaintiff Care Choices HMO, a Medicare secondary payer, claimed that because its agreement with its insured included a subrogation provision, its contract action seeking subrogation presented a federal question, establishing federal jurisdiction. The issue in *Care Choices HMO* was federal question jurisdiction under 28 U.S.C. § 1331 and not removal jurisdiction under 28 U.S.C. § 1441. Nevertheless, although the complete preemption doctrine was not implicated, the Sixth Circuit's analysis of whether a right of action exists under section 1395mm(e)(4), one of the statutes relied upon by Aetna, is relevant in analyzing whether Congress intended to create a federal remedial scheme for private health insurers.

The Sixth Circuit found that section 1395mm(e)(4) created no explicit right of action because it contains no civil enforcement measure. *Care Choices HMO*, 330 F.3d at 789. Analyzing the purpose of section 1395mm(e)(4), it also determined that there is no implied right of action. *Id.* at 789–90. The Court held that Congress only intended section 1395mm(e)(4) to permit a right of reimbursement within private insurance agreements with Medicare beneficiaries, and did not create any federally enforceable cause of action. *Id.* at 791. Thus, it found that federal question jurisdiction was lacking. *Id.*

Both provisions in the Medicare Act relied upon by Aetna, sections 1395w–22(a)(4) and 1395mm(e)(4), are almost identical. There is no federal cause of action created by either subsection, let alone one whose pervasive federal character displaces all state causes of action.

Aetna concedes that Nott's claims arise under a private contract between an insurer and its insured. *Brief in Opposition,* at 10 n. 10 (stating that this case involves "a contractual right of reimbursement"). The fact that a state law contract action requires reference to Medicare benefits does not transform the lawsuit into one "arising under" the Medicare Act. *See Smith,* 957 F.2d at 93.

We conclude that the Medicare Act permits, but does not mandate, HMO insurers to contract for subrogation rights. The pertinent provisions state that an eligible organization or a Medicare + Choice organization "*may* . . . charge or authorize the provider of such services to charge" insurance carriers, employers, or individuals who have received payment for the medical services rendered. 42 U.S.C. §§ 1395w–22(a)(4), 1395mm(e)(4) (emphasis added). This permissive language cannot be construed, explicitly or implicitly, as creating a mechanism for enforcing the contractual right to reimbursement if the insurer does include a subrogation provision. Once bargained for, the contractual

right of reimbursement is not transformed into a federal right enforceable under the Medicare Act merely because the contract relates to an insurer's Medicare plan. The right to subrogation remains a contract dispute between a private insurer and its insured.

### B. Lack of Congressional Intent

■ There must also be an "affirmative indication of requisite Congressional intent to permit removal" of state law causes of action before complete preemption can apply. *Ry. Labor Executives Ass'n*, 858 F.2d at 942–43. The Supreme Court has stated that "the touchstone of the federal district court's removal jurisdiction is … the intent of Congress." *Metro. Life Ins. Co.*, 481 U.S. at 66, 107 S.Ct. 1542. A search of the legislative history fails to reveal any evidence of an express congressional intent that sections 1395w–22(a)(4) and 1395mm(e)(4) completely preempt any state law cause of action. Nor has Aetna directed our attention to any such statement of Congressional intent. *See Allstate*, 879 F.2d at 94.

Because there is no explicit private cause of action created in the Medicare Act in favor of HMOs, the Sixth Circuit, in *Care Choices HMO*, analyzed whether there was an implicit one that would permit the court to exercise its original subject matter jurisdiction. It found none. *Care Choices HMO*, 330 F.3d at 788–91. The fact that the legislation must be evaluated to determine whether an implied right exists militates against a finding that Congress clearly intended the Medicare Act to completely preempt state law contract actions dealing with an HMO's subrogation rights.

Aetna's argument notwithstanding, there is no comparison between the Medicare and ERISA statutes.[8] There is no language in the Medicare Act similar to that of section 502(a) of ERISA, where Congress explicitly created a civil enforcement scheme.[9] Nor is there any language in the legislative history of the Medicare Act indicating any Congressional intent that the Medicare Act completely preempt a plaintiff's state law cause of action.[10]

**8.** Possessory land claims by Indian tribes and actions for usury under the National Bank Act do not satisfy this prong with an explicit Congressional statement; rather the uniquely federal nature of such claims does. See *Beneficial Nat'l Bank*, 539 U.S. at —— n. 4, 123 S.Ct. at 2063 n. 4, 2064; *Oneida Indian Nation*, 414 U.S. at 667, 94 S.Ct. 772. The Medicare Act has no history justifying a finding that complete preemption exists despite the lack of an explicit statement of congressional intent. Thus, analogy to section 502(a) of ERISA is more appropriate.

**9.** By the time of ERISA's enactment, the Supreme Court had already decided *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), holding that actions arising under section 301 of the Labor–Management Relations Act ("LMRA") brought in state court are removable on the basis of original jurisdiction. Congress's carefully chosen ERISA language, stating that

all actions to enforce section 502(a) "in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor–Management Relations Act of 1947," clearly indicates its awareness of the Supreme Court's *Avco* ruling on the preemptive force of section 301 of the LMRA and its desire to have ERISA's section 502(a) actions treated similarly. *Ry. Labor Executives Ass'n*, 858 F.2d at 940–41 (summarizing *Metropolitan Life's* finding of a " 'specific reference to the *Avco* rule' " in the ERISA Conference Report, where the Court held that a state law cause of action arose under section 301 of the Labor Management Relations Act).

**10.** Further, the ordinary preemption language in regulations pursuant to the Medicare Act state that "the rules established under this section supersede any State laws, regulations, contract requirements, or other standards that would otherwise apply to M+C plans

Thus, the element of clear Congressional intent necessary for application of complete preemption is missing.

## V. Conclusion

Although the Medicare Act permits HMOs to contract with their insureds for subrogation, it does not provide a mechanism for them to enforce their private contractual rights. Therefore, this action is not completely preempted and the well-pleaded complaint rule warrants that it be remanded to the state court pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction.[11]

### ORDER

AND NOW, this 23rd day of January, 2004, upon consideration of Plaintiff's Motion for Remand, Attorney's Fees and Costs (Docket No. 5), Aetna's Brief in Opposition to Plaintiff's Motion for Remand (Docket No. 7), Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Remand (Docket No. 8), and Plaintiff's Motion for Leave to File Correction to Plaintiff's Memorandum of Law in Support of Motion for Remand (Docket No. 10), it is **ORDERED** that plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that:

1. This action is **REMANDED** to the Court of Common Pleas of Bucks County pursuant to 28 U.S.C. § 1447(c).

2. The plaintiff's request for attorney fees and costs is **DENIED.**

*only to the extent* that those State laws *are inconsistent with* the standards established under this part." 42 C.F.R. § 422.108(f) (emphasis added). The fact that the regulations themselves point out that only inconsistent state laws are preempted necessarily undermines Aetna's position that Congress intended that sections 1395w–22(a)(4) and 1395mm(e)(4) completely preempt all state law causes of action. *See Goepel,* 36 F.3d at 316 (Stapleton, C.J., concurring) (emphasizing the distinction drawn in a footnote of the majority opinion between the language contained in FEHBA, which is similar to the language of the Medicare regulations, and the language of section 514(a) of ERISA, which preempts "any and all state laws" relating to employee benefits plans).

11. Our determination that Nott's state law claims are not completely preempted by federal law does not address the merits of Aetna's ordinary conflict preemption defenses. Indeed, absent a Congressional intent to completely preempt plaintiff's claims, this Court cannot address the question of substantive conflict preemption. *Goepel,* 36 F.3d at 316; *Ry. Labor Executives Ass'n,* 858 F.2d at 942. Aetna is free to argue conflict preemption in the state court. *Caterpillar, Inc.,* 482 U.S. at 398 n. 13, 107 S.Ct. 2425.