OPINION OF THE COURT
David I. Schmidt, J.
Plaintiff Marie Ferlazzo moves, by way of order to show cause, for an order extinguishing the liens and/or subrogation rights asserted by Oxford Health Plan and the Rawlings Company, LLC (collectively, Oxford) against plaintiffs settlement proceeds from the underlying personal injury action.
Plaintiff commenced this action on December 7, 2009 to recover damages for personal injuries sustained on December 1, 2009. At all relevant times, plaintiff was enrolled under a Medicare Advantage plan administered by Oxford, a private insurer authorized under federal law to provide benefits to Medicare recipients. The Medicare Advantage plan covering plaintiff contained the following provisions:
“In the case of injuries caused by any act or omission of a third party, and any complications incident thereto, we shall furnish all Covered Services. However, you agree to fully reimburse us or our designee for the cost of all such services and benefits provided, immediately upon obtaining a monetary recovery, whether due to settlement or judgment, as a result of such injuries. . . .
“We may collect, at our opinion, amounts from proceeds of any Third Party settlement (whether before or after any determination of liability) or judgment that may be recovered by you-r [sic] or your legal representative, regardless of whether you have been made whole. You will hold any proceeds of such a Third Party settlement or judgment in a constructive trust for our benefit under these subrogation provisions. We will be entitled to recover from you reasonable attorney fees incurred in collecting proceeds held by you.”
On or about October 27, 2010, Oxford served upon plaintiffs counsel an “update of lien amount” claiming it made payments in the amount of $39,680.89 for plaintiffs medical expenses which Oxford believed to be proximately related to the accident. On April 7, 2011, a settlement agreement was reached in this action and the case was settled for the sum of $150,000. Plaintiff *423 seeks by way of the instant order to show cause an order extinguishing the purported liens and/or subrogation rights against the settlement proceeds on the ground that such liens and/or subrogation rights are precluded by General Obligations Law § 5-335 (a), which went into effect three weeks prior to the commencement of this action. This statute provides:
“(a) When a plaintiff settles with one or more defendants in an action for personal injuries, medical, dental, or podiatric malpractice, or wrongful death, it shall be conclusively presumed that the settlement does not include any compensation for the cost of health care services, loss of earnings or other economic loss to the extent those losses or expenses have been or are obligated to be paid or reimbursed by a benefit provider, except for those payments as to which there is a statutory right of reimbursement. By entering into any such settlement, a plaintiff shall not be deemed to have taken an action in derogation of any nonstatutory right of any benefit provider that paid or is obligated to pay those losses or expenses; nor shall a plaintiffs entry into such settlement constitute a violation of any contract between the plaintiff and such benefit provider.
“Except where there is a statutory right of reimbursement, no party entering into such a settlement shall be subject to a subrogation claim or claim for reimbursement by a benefit provider and a benefit provider shall have no lien or right of subrogation or reimbursement against any such settling party, with respect to those losses or expenses that have been or are obligated to be paid or reimbursed by said benefit provider.”
Thus, insofar as Oxford is seeking to recover medical costs paid to plaintiff out of the settlement proceeds, the statute clearly precludes such recovery unless Oxford can establish a “statutory right of reimbursement.”
The Medicare Secondary Payer Act (MSPA) provides that Medicare is secondary to other insurers including group health plans, workers’ compensation plans, automobile or liability insurance plans (including self-insured plans) and no-fault insurance (42 USC § 1395y [b] [2] [A]). The MSPA authorizes Medicare to make conditional payments for an enrollee’s medical treatment and requires primary plans to reimburse Medicare for services that would have been covered under the enrollee’s *424 primary plan (42 USC § 1395y [b] [2] [B]). In the event the primary plan fails to reimburse Medicare, the United States is authorized to bring an action against the primary plan for double the amount due (42 USC § 1395y [b] [2] [B] [in]).
In 1997, the Medicare Advantage Program (formerly known as Medicare+Choice Program) was created as an alternative to the government Medicare program. Under the Medicare Advantage Program, enrollees have the option of receiving their Medicare insurance from private insurers instead of direct benefits from the federal government. Just as the MSPA makes Medicare secondary to other insurers, the Medicare Advantage statute makes the private insurer a secondary payer. One significant difference, however, is that the Medicare Advantage statute does not expressly require a primary plan to reimburse a private insurer providing replacement coverage for Medicare-eligible persons or expressly authorize a private right of action in favor of the private insurer to recover payments. Rather, the statute allows the private insurer to include in its insurance contract a right of subrogation against an insured’s recovery from a third party for money previously paid for the insured’s medical care (42 USC § 1395w-22 [a] [4]; § 1395mm [e] [4]).* *425 Federal courts have determined that because the relevant provisions of the Medicare Advantage statute do not provide a scheme for the civil enforcement of a Medicare Advantage insurer’s subrogation rights, there exists no private right of action in favor of the insurer for subrogation (Care Choices HMO v Engstrom, 330 F3d 786, 791 [6th Cir 2003]; Nott v Aetna U.S. Healthcare, Inc., 303 F Supp 2d 565 [ED Pa 2004]).
In Care Choices HMO, the Sixth Circuit considered whether a private insurer providing Medicare replacement coverage had a private right of action under the Medicare Advantage statute. The court found no express private right of action in the statute and, after applying the factors annunciated by the Supreme Court in Cort v Ash (422 US 66, 78 [1975]) further noted that a private remedy could not be implied. The court looked to the purpose and language of the Medicare Advantage statute and found that it was not intended to create an affirmative federal cause of action to enforce its subrogation rights. Rather, the private insurer had a “widely recognized alternative avenue for enforcement”: a standard insurance contract claim in state court (Care Choices HMO, 330 F3d at 790).
In Nott, the district court considered the question of whether a Medicare Advantage private insurer’s right to assert subrogation against an enrollee’s tort recovery arose under the Medicare Advantage statute. The court noted that the relevant provisions “authorize, but do not require” the private insurer to include in its contract a provision for recoupment of medical expenses from a third party recovery (Nott, 303 F Supp 2d at 567-568). The court concluded that this permissive language, along with the absence of an express remedial provision, evidenced Congress’s intention not to create an explicit right of action for private Medicare insurers (id. at 571-572). Rather, the court held, if the private insurer includes a subrogation provision in its insurance contract, the right to subrogation remains a private contractual right which may be enforced in state court (id. at 572, 573).
Consequently, the Medicare Advantage insurer’s right to reimbursement does not stem from the statute but rather from *426 the private contract made with the enrollee. There is no statutory right to reimbursement in favor of Medicare Advantage insurers, but rather only “statutory permission” to include recovery provisions in their contracts (Nott, 303 F Supp 2d at 571). Oxford, having no statutory right of reimbursement, is therefore subject to the provisions of General Obligations Law § 5-335 and is not entitled to recoup any part of plaintiffs settlement proceeds as compensation for the cost of health care services (see Trezza v Trezza, 32 Misc 3d 1209[A], 2011 NY Slip Op 51237[U] [2011]).
As a result, plaintiffs motion to extinguish the liens and/or subrogation rights asserted by Oxford is granted.

 42 USC § 1395w-22 (a) (4) states that
“[notwithstanding any other provision of law, a Medicare+Choice organization may (in the case of the provision of items and services to an individual under a Medicare+Choice plan under circumstances in which payment under this title is made secondary pursuant to section 1395y(b)(2)) of this title charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—
“(A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or
“(B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services.” (Emphasis added.)
42 USC § 1395mm (e) (4) states that
“[n]otwithstanding any other provision of law, the eligible organization may (in the case of the provision of services to a member enrolled under this section for an illness or injury for which the member is entitled to benefits under a workmen’s compensation law or plan of the United States or a State, under an automobile or liability insurance policy or plan, including a self-insured plan, or under no fault insurance) charge or authorize the provider of such services to charge, in accordance with the charges allowed under such law or policy— *425 “(A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or
“(B) such member to the extent that the member has been paid under such law, plan, or policy for such services.” (Emphasis added.)