# Third District Court of Appeal

## State of Florida

Opinion filed December 2, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D12-2883
Lower Tribunal No. 10-31906
_____

**Humana Medical Plan, Inc.,**
Appellant,

vs.

**Mary Reale, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Lester Langer, Judge.

McDermott Will & Emery and M. Miller Baker (Washington, DC); GrayRobinson and Daniel Alter and Jeffrey T. Kuntz (Fort Lauderdale); Lawrence & Russell and Eileen Kuo (Memphis, TN), for appellant.

Philip D. Parrish; Donna B. Michelson, for appellees.


Before SHEPHERD, ROTHENBERG and SALTER, JJ.

SHEPHERD, J.

Humana Medical Plan, Inc., a Medicare Advantage organization, appeals a final judgment determining its right to reimbursement of conditional Medicare payments under Florida subrogation law, including Florida's collateral sources of indemnity statute, section 768.76, Florida Statutes (2012).  Because we find that the court below did not have subject-matter jurisdiction to review this dispute and that Florida's collateral sources of indemnity statute is on its face inapplicable, and Florida subrogation law is expressly preempted by the Medicare Act, we vacate the judgment below and reverse and remand with instructions to dismiss the complaint.

## BACKGROUND

Humana, the appellant in this case, administers Medicare benefits to enrollees in its Medicare Advantage plans pursuant to a contract with the Centers for Medicare and Medical Services.  At all relevant times, Mary Reale, the appellee, was enrolled in a Humana Medicare Advantage plan (Humana Gold Plus H1036-054C).  In January 2009, Mrs. Reale sustained injuries resulting from a fall at Hamptons West Condominiums.  Between the date of the fall and April 2009, Humana paid conditional Medicare benefits for Mrs. Reale's medical treatment.  The parties have stipulated that Humana expended $19,155.41.

Mrs. Reale and her husband, August Reale, filed a personal injury action against the Hamptons West Condominiums, a home health aide who was accused of causing the fall, and a resident of Hamptons West who employed the home health

2

aide. The parties settled the lawsuit in the amount of $135,000 for Mrs. Reale's economic and non-economic damages and Mr. Reale's loss of consortium claim. The Reales' attorney, Donna Michelson, has set aside, in trust, sufficient funds for the amount of benefits paid by Humana. In a letter dated March 11, 2010, Humana presented Ms. Michelson with a payment report and informed her of its determination that it was entitled to reimbursement of the full amount of conditional Medicare benefits it provided. The Reales, through counsel, declined to reimburse Humana in the amount requested and did not initiate an administrative appeal of Humana's determination. Ms. Michelson and the Reales have agreed that Ms. Michelson may keep as additional attorney's fees any portion of those funds she can avoid having to reimburse to Humana.

In May 2010, Humana brought an action against Mrs. Reale and Ms. Michelson in the United States District Court for the Southern District of Florida seeking reimbursement of the $19,155.41 pursuant to the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b). Mrs. Reale moved to dismiss for lack of subject-matter jurisdiction on the theory that the Medicare Act did not provide Humana with an express or implied right of action for reimbursement. The court granted the motion. Humana Med. Plan, Inc. v. Reale, 2011 WL 335341 (S.D. Fla. 2011), vacated (Sept. 26, 2011). Humana then filed a motion to amend or correct the order of dismissal, which was partially granted. The court vacated its order and scheduled a hearing on

3

Humana's motion. Humana subsequently dismissed the action for recovery against Mrs. Reale and her attorney and instead brought a federal action for reimbursement against Western Heritage Insurance Company, Hampton West's liability insurer, which funded the Reales' settlement. On March 16, 2015, the United States District Court entered an order granting Humana's motion for summary judgment, finding that Humana could maintain a private right of action for double damages against Western Heritage pursuant to 42 U.S.C. § 1395y(b)(3)(A).[1] Humana Med. Plan, Inc. v. W. Heritage Ins. Co., 94 F. Supp. 3d 1285 (S.D. Fla. 2015). Western Heritage has appealed, and Humana's reimbursement claim remains unsatisfied.

During the ongoing initial federal action for reimbursement that Humana brought against Mrs. Reale and Ms. Michaelson, Mr. and Mrs. Reale brought this action in the circuit court below for a declaration of Humana's right to reimbursement, asserting that Humana's payments constituted a collateral source of indemnity and that Florida's collateral sources of indemnity statute, section 768.76, Florida Statutes (2012), and not Medicare's Secondary Payer Act, provided

---

[1] 42 U.S.C. § 1395y(b), the Medicare Secondary Payer Act, makes Medicare a secondary payer in relation to other sources, such as liability insurers, which are considered primary plans. If Medicare has made payments for services for which a primary plan is ultimately responsible, reimbursement is required. See infra pp. 9-11. 42 U.S.C. § 1395y(b)(3)(A) establishes a private cause of action for double damages when a primary plan does not provide reimbursement.

4

Humana's right of recovery. Humana moved to dismiss for lack of subject-matter jurisdiction and failure to state a cause of action based on three separate grounds:

1. Mrs. Reale did not exhaust the mandatory administrative appeal process for disputing Medicare benefits, and even if she had, jurisdiction would lie exclusively in the federal courts.

2. Federal law preempts Florida's collateral sources of indemnity statute.

3. By its terms, the collateral sources statute does not apply to claims for Medicare benefits.

After temporarily staying the lower court proceedings to allow resolution of the initial federal action, the circuit court denied Humana's motion to dismiss. Humana then filed a motion for summary judgment based on the same three grounds, which was also denied. To expedite the process, the parties stipulated to the relevant facts, and the Reales filed a motion for final judgment. On October 30, 2012, the circuit court entered final summary judgment, finding that it had subject-matter jurisdiction pursuant to section 86.011, Florida Statutes, and Care Choices HMO v. Engstrom, 330 F.3d 786 (6th Cir. 2003). The court also found that Florida subrogation law, including the collateral sources statute, was applicable in determining Humana's right to reimbursement. Pursuant to the formula in section 768.76(4), Florida Statutes, for calculating the amount of recovery for "[a] provider of collateral sources that has a right of subrogation or reimbursement[,]" the court

5

calculated Humana's total reimbursement to be $3,685.03.[2]  Humana timely appealed.

## THE MEDICARE FRAMEWORK

Because of the complex nature of the Medicare Act, we begin by providing a brief overview of the Medicare framework and the provisions at issue in this case. Title 42, chapter 7, Subchapter XVIII of the United States Code (also designated Title XVIII of the Social Security Act) is entitled "Health Insurance for Aged and Disabled."  Popularly referred to as "the Medicare Act," it has been described as "one of the most completely impenetrable texts within the human experience." E.g., Parra v. PacifiCare of Arizona, Inc., 715 F.3d 1146, 1149 (9th Cir. 2013) (quoting Cooper Univ. Hosp. v. Sebelius, 636 F.3d 44, 45 (3d Cir.2010)).  Medicare benefits are divided into four parts: Part A, "Hospital Insurance Benefits for Aged and Disabled" (42 U.S.C. §§ 1395c to 1395i-5); Part B, "Supplementary Medical Insurance Benefits for Aged and Disabled" (42 U.S.C. §§ 1395j to 1395w-5); Part C, "[Medicare Advantage] [3] Program" (42 U.S.C. §§ 1395w-21 to 1395w-28); and

---

[2] The circuit court found that Mrs. Reale's $135,000 settlement was 33.75% of the full value of her claims; therefore, the court took 33.75% of the total benefits paid by Humana ($19,155.41), which amounts to $6,464.95.  The court further reduced that amount by 43% for fees and costs incurred in securing the settlement, bringing the total reimbursement amount to $3,685.03.

[3] The current Part C Medicare Advantage program was formerly known as "Medicare+Choice," and many Part C provisions still use that terminology.  When Congress made revisions to the program and changed the name in 2003, it provided that "any reference to the program under part C of title XVIII of the Social Security

Part D, "Voluntary Prescription Drug Benefit Program" (42 U.S.C. §§ 1395w-101 to 1395w-154). There is also a Part E for "Miscellaneous Provisions" (42 U.S.C. §§ 1395x to 1395lll).

## PART C: THE MEDICARE ADVANTAGE PROGRAM

This case involves benefits received under Part C. The Medicare Act allows eligible individuals to obtain hospital and medical benefits through one of two programs: "(A) through the original medicare fee-for-service program under parts A and B . . . or (B) through enrollment in a [Medicare Advantage] plan under [part C]." 42 U.S.C. § 1395w-21(a); see also In re Avandia Mktg., Sales Practices & Prods. Liab. Litig. 685 F.3d 353, 357 (3d Cir. 2012). "Congress's goal in creating the Medicare Advantage program was to harness the power of private sector competition to stimulate experimentation and innovation that would ultimately create a more efficient and less expensive Medicare system." In re Avandia Mktg., 685 F.3d at 363 (citing H.R. Rep. No. 105–217, at 585 (1997), 1997 U.S.C.C.A.N. 176, 205–06 (Conf. Rep.)); see also Parra, 715 F.3d at 1152-53 ("Part C is intended to 'allow beneficiaries to have access to a wide array of private health plan choices in addition to traditional fee-for-service Medicare . . . [and] enable the Medicare program to

---

Act shall be deemed a reference to the Medicare Advantage program and, with respect to such part, any reference to 'Medicare+Choice' is deemed a reference to 'Medicare Advantage' and 'MA'." Medicare Prescription Drug, Improvement, and Modernization Act of 2003, PL 108–173, December 8, 2003, 117 Stat 2066.

utilize innovations that have helped the private market contain costs and expand health care delivery options.'" (quoting H.R. Rep. No. 105–149, at 1251 (1997))).

The Centers for Medicare & Medicaid Services ("CMS") administers the Medicare program on behalf of the Secretary of Health and Human Services.[4] Part C allows eligible individuals to obtain benefits through Medicare Advantage plans, which are administered by private insurers known as Medicare Advantage organizations ("MAOs") that enter into contracts with CMS.[5] 42 C.F.R. § 422.503 ("In order to qualify as an MA organization, enroll beneficiaries in any MA plans it offers, and be paid on behalf of Medicare beneficiaries enrolled in those plans, an MA organization must enter into a contract with CMS."). CMS pays MAOs a fixed amount for each enrollee, which is determined pursuant to 42 U.S.C. § 1395w-23. In exchange, the MAOs provide the same (or more) benefits an enrollee would receive under the original Medicare fee-for-service program (Parts A and B). See

---

[4] Compare 42 U.S.C § 1395kk(a) ("[T]he insurance programs established by this subchapter shall be administered by the Secretary. The Secretary may perform any of his functions under this subchapter directly, or by contract[.]") with Health Care Financing Administration; Statement of Organization, Functions, and Delegations of Authority, 46 FR 56911-03 (1981) ("The mission of the Health Care Financing Administration (HCFA) is to administer the Medicare and Medicaid programs and related provisions of the Social Security Act[.]") and 42 C.F.R. § 400.200 (2012) "(CMS stands for Centers for Medicare & Medicaid Services, formerly the Health Care Financing Administration (HCFA).").

[5] CMS also relies on private contractors to carry out many of its administrative functions for Parts A and B. 42 U.S.C. § 1395h(a) ("The administration of [Part A] shall be conducted through contracts with medicare administrative contractors under section 1395kk-1 of this title"); § 1395u(a) (same as to Part B).

42 U.S.C. § 1395w-22(a); 42 C.F.R. § 422.100(c) ("An MA plan includes at a minimum basic benefits, and also may include mandatory and optional supplemental benefits.").

**THE MEDICARE SECONDARY PAYER ACT**

In 1980, Congress enacted the Medicare Secondary Payer ("MSP") Act "in an effort to contain the costs of the Medicare program." Potts v. Rawlings Co., LLC, 897 F. Supp. 2d 185, 188 (S.D.N.Y. 2012). The MSP Act, 42 U.S.C. § 1395y(b),[6] makes Medicare a "secondary payer" in relation to certain other sources, which are considered "primary payers." Id. Under the Act, Medicare payments "may not be made" if "payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including self-insured plan) or under no fault insurance." 42 U.S.C. § 1395y(b)(2)(A); see also Potts, 897 F. Supp. 2d at 188. However, conditional Medicare payments may be made if a primary payer "has not made or cannot reasonably be expected to make payment . . . promptly." 42

---

[6] The MSP Act is found in the "miscellaneous provisions" of Part E. Recent court decisions have held that provisions in Part E that use the language "this subchapter," apply to the entire Medicare Act (Subchapter XVIII), including Part C. See, e.g., In re Avandia Mktg., 685 F.3d at 359-60 (finding that the "payments under this subchapter" language in 42 U.S.C. § 1395y(b)(2)(A) makes the MSP private cause of action provision, § 1395y(b)(3)(A), applicable "to payments made under Part C as well as those made under Parts A and B.").

9

U.S.C. § 1395y(b)(2)(B).  When conditional payments are made, the MSP Act requires reimbursement.  Id.

> In practice, this system works as follows: In a situation where another party is ultimately responsible for paying the healthcare costs of a Medicare enrollee, the money may not be available at the time the services are provided. For example, if an enrollee is injured in an accident caused by a third party tortfeasor, that tortfeasor (or its insurer) is ultimately responsible for the payment of the enrollee's healthcare costs as a result of the accident. But the enrollee will not likely receive the proceeds of any settlement with, or judgment against, the tortfeasor in time to pay her hospital bills. In such a situation, Medicare will pay the hospital bills on the condition that either the tortfeasor reimburse the Medicare Trust Fund directly, or the enrollee reimburse the Trust Fund, to the extent she has already received monies from the tortfeasor.

Potts, 897 F. Supp. 2d at 188.

Part C includes a similar provision that "cross-references § 1395y(b)(2) for its definitions of primary payer and its positioning of Medicare as a secondary payer."

In re Avandia Mktg., 685 F.3d at 358.  The Part C provision states:

> Notwithstanding any other provision of law, [an MAO] may (in the case of the provision of items and services to an individual under [an MA] plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section--
>
> (A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or

10

> (B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

42 U.S.C. § 1395w-22(a)(4).

## ANALYSIS

Because the parties stipulated to the relevant facts, the circuit court's ruling was based on pure issues of law. We review pure issues of law *de novo*. Rittman v. Allstate Ins. Co., 727 So. 2d 391, 393 (Fla. 1st DCA 1999). Whether a court has subject-matter jurisdiction involves a question of law and is also reviewed *de novo*. Nissen v. Cortez Moreno, 10 So. 3d 1110, 1111 (Fla. 3d DCA 2009).

## I.    SUBJECT-MATTER JURISDICTION

Humana argues that the circuit court lacked subject-matter jurisdiction because the Reales failed to exhaust mandatory administrative remedies and, even if exhaustion had occurred, the Reales' claim is subject to exclusive federal jurisdiction. We agree.

Certain provisions of the Social Security Act are made applicable to the Medicare Act through 42 U.S.C. § 1395ii.[7] One of those provisions is 42 U.S.C. § 405(h), which states, in relevant part:

---

[7] 42 U.S.C. § 1395ii is found in Part E of the Medicare Act and, by its language, applies to the entire Medicare Act (subchapter XVIII), including Part C. Cf. supra note 6.

**No findings of fact or decision of the [Secretary of Health and Human Services]**[8] **shall be reviewed by any person, tribunal, or governmental agency except as herein provided**. No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on **any claim arising under this subchapter.**[9]

(emphasis added). In Heckler v. Ringer, 466 U.S. 602, 614 (1984), the Supreme Court of the United States explained that 42 U.S.C. § 405(h) makes 42 U.S.C. § 405(g), the Social Security program's judicial review provision, "the sole avenue for judicial review of all claims arising under the Medicare Act." (internal quotation marks omitted). See also, e.g., Potts, 897 F. Supp. 2d at 191 ("Under 42 U.S.C. § 405(h), which is made applicable to the Medicare Act by 42 U.S.C. § 1395ii, '[n]o findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided [in § 405(g).] . . . .'" (alterations in original)). In addition, Part C includes a provision that expressly

---

[8] In applying provisions of the Social Security Act to the Medicare Act, "any reference . . . to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively." 42 U.S.C. § 1395ii.

[9] Revoking federal jurisdiction under 28 U.S.C. §§ 1331 (federal-question jurisdiction) and 1346 (federal tort claims) "is intended to prevent circumvention of the administrative process provided for the adjudication of disputes between Medicare beneficiaries and the government (or agents of the government . . .)." United States v. Blue Cross & Blue Shield of Alabama, Inc., 156 F.3d 1098, 1103 (11th Cir. 1998).

incorporates § 405(g) into the Medicare Advantage context. See 42 U.S.C. § 1395w-22(g)(5).

Section 405(g), in turn, limits jurisdiction of claims arising under the Medicare Act to the federal courts but only after exhaustion of administrative remedies:

> Any individual, **after any final decision of the [Secretary of Health and Human Services] made after a hearing to which he was a party** . . . **may obtain a review of such decision by a civil action** . . . . **Such action shall be brought in the district court of the United States** for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

(emphasis added). Therefore, 42 U.S.C. §§ 405(h) and 405(g), when read together, create an **exclusive** review process for all claims arising under the Medicare Act, including claims brought in the context of the Medicare Advantage program.

In Potts, a Medicare Advantage case similar to the one before us, the United States District Court for the Southern District of New York explained that "[t]he Supreme Court has interpreted the 'claim arising under' language in § 405(h) 'quite broadly.'" 897 F. Supp. 2d at 192 (quoting Heckler, 466 U.S. at 615). The Potts court further explained that "[a] claim 'arises under' the Medicare Act (1) if 'both the standing and substantive basis' for the claim is the Medicare Act, or (2) if the

claim is 'inextricably intertwined' with a claim for benefits under the Medicare Act."

Id.

CMS requires MAOs to provide "[a] general description of procedural rights (including grievance and appeals procedures)" to Medicare Advantage plan enrollees. 42 C.F.R. § 422.111(f)(3). As required, Humana mailed Mrs. Reale an Evidence of Coverage (EOC) every year outlining her rights and responsibilities. Humana's 2009 and 2010 EOCs both describe, in detail, the plan's appeals process, including an enrollee's right to appeal to a federal district court after completing the administrative review process. The EOCs also outline the coordination of benefits under Medicare's Secondary Payer rules. Both EOCs clearly state that if Humana makes a payment to an enrollee for covered services, Humana is "entitled to be fully subrogated to any and all rights you have against any person, entity, or insurer that may be responsible for payment of medical expenses and/or benefits related to your injury, illness, or condition."

The Reales do not dispute that this mandatory review process applies to all claims arising under the Medicare Act,[10] nor do the Reales claim that they exhausted

---

[10] The dissent, however, suggests 42 U.S.C. § 405(g) does not apply to MAOs because Heckler "antedated the establishment of MAOs by many years." Dissent at 11. We do not rely on Heckler for the proposition that the process set forth in § 405(g) is applicable to MAOs. As we, and many courts before us, have explained, § 405(g) is made applicable to the Medicare Advantage program by the Medicare Act itself (through 42 U.S.C. § 1395ii and 42 U.S.C. § 1395w-22(g)(5)). See also 42 C.F.R. § 422.562(b)(4) (MA enrollee appeal rights).

their reimbursement dispute.  Instead, they put forth several arguments why, in spite of these clear statutory jurisdictional requirements, this Court has subject-matter jurisdiction:

1.  Humana does not have a federal cause of action against the Reales; therefore, this dispute does not arise under the Medicare Act.

2.  Exhaustion is not required because this dispute over Humana's reimbursement rights is at most a grievance.

3.  Humana waived the exhaustion requirement when it brought an action for recovery in federal court.

We find these arguments, which we treat in turn, unavailing.

### a.  Arising under the Medicare Act

The Reales' principal argument is difficult to parse but appears to be that the court below properly exercised jurisdiction because MAOs, such as Humana, are not provided with a federal cause of action under 42 U.S.C. § 1395w-22(a)(4), and therefore, the Reales' action arises under state law rather than under the Medicare Act.  The Reales contend that because the language found in § 1395w-22(a)(4) is permissive,[11] the provision authorizes, but does not compel, an MAO to charge an

---

[11] "Notwithstanding any other provision of law, [an MAO] **may** . . . charge . . . (A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or (B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services."  42 U.S.C. § 1395w-22(a)(4) (emphasis added).

entity or individual for payments when the MAO is a secondary payer. The circuit court's finding of subject-matter jurisdiction seems to be partially premised on this argument as well.[12]

The Reales cite a handful of cases to support this assertion. See Parra v. PacifiCare of Arizona, Inc., 715 F.3d 1146, 1146 (9th Cir. 2013) (finding that an MAO did not have a federal private cause of action for reimbursement under § 1395mm(e)(4);[13] therefore, the MAO's reimbursement claim arose by virtue of its contract with plan participants); Engstrom, 330 F.3d 786 (6th Cir. 2003) (finding that a Medicare HMO, a precursor to Part C, did not have a federal right of action under 42 U.S.C. § 1395mm(e)(4)); Konig v. Yeshiva Imrei Chaim Viznitz of Boro Park Inc., 12-CV-467, 2012 WL 1078633 (E.D.N.Y. 2012) (remanding an MAO's federal action for reimbursement to state court because the MAO did not have a federal cause of action under the Medicare Act); Ferlazzo v. 18th Ave. Hardware, Inc., 929 N.Y.S.2d 690 (Sup. Ct. 2011) (finding that an MAO did not have a federal right of action under 42 U.S.C. §§ 1395mm(e)(4) and 1395w-22(a)(4)); Nott v.

---

[12] The circuit court's finding of jurisdiction was based on section 86.011, Florida Statutes, and Care Choices HMO v. Engstrom, 330 F.3d 786 (6th Cir. 2003).

[13] See D. Gary Reed, Esq., Medicare Advantage Misconceptions Abound, Health Law., October 2014, at 1, 3 ("42 U.S.C. § 1395mm governed the Medicare HMO option that was the precursor to Medicare Part C. Not understanding this, several decisions cite that provision when discussing the Medicare Part C option, instead of or along with the correct Part C provision.").

16

<u>Aetna U.S. Healthcare, Inc.</u>, 303 F. Supp. 2d 565 (E.D. Pa. 2004) (finding that a Medicare+Choice organization did not have a federal right of action under 42 U.S.C. §§ 1395mm(e)(4) and 1395w-22(a)(4)).

Conspicuously absent from these cases, however, is any analysis whatsoever of the review process set forth in 42 U.S.C. § 405(g). Indeed, none of these cases even so much as mentions § 405(g)'s mandatory exhaustion and exclusive federal jurisdiction requirements, and the Reales are unable to point us to a single case in which these requirements were actually considered and found to be inapplicable in a dispute—such as the one before us now—involving an MAO's right to reimbursement.

Contrary to what the Reales would have us believe, courts have consistently and overwhelmingly held that disputes concerning reimbursement of conditional payments are claims for benefits that "arise under the Medicare Act" and must be exhausted through the administrative appeals process before an enrollee invokes judicial review in a federal court. <u>See, e.g.</u>, <u>Collins v. Wellcare Healthcare Plans, Inc.</u>, 2014 WL 7239426 (E.D. La. 2014) (holding that a Medicare Advantage enrollee's state court action seeking a declaration that an MAO was not entitled to reimbursement was a claim arising under the Medicare Act that must be exhausted before any judicial review); <u>Einhorn v. CarePlus Health Plans, Inc.</u>, 43 F. Supp. 3d 1329 (S.D. Fla. 2014) (holding that a Medicare Advantage enrollee's Florida

17

Consumer Practices Act claim against an MAO for demanding reimbursement greater than what was due was a claim arising under the Medicare Act that must be brought through the administrative appeals process before it could be taken to federal court); Cupp v. Johns, 2:14-CV-02016, 2014 WL 916489 (W.D. Ark. 2014) (holding that a Medicare Advantage enrollee's Arkansas subrogation law action seeking a declaration that an MAO did not have a right to reimbursement arose under the Medicare Act, and the appropriate remedy was to go through the administrative review and appeals process required by the Medicare Act); Potts, 897 F. Supp. 2d 185 (holding that Medicare Advantage enrollees' action seeking declaratory judgment regarding MAO reimbursement rights pursuant to a New York anti-subrogation statute arose under the Medicare Act and was subject to the requirements of § 405(g)); Phillips, 953 F. Supp. 2d at 1081 (holding that a Medicare Advantage enrollee's California consumer protection claim against an MAO seeking reimbursement was a disguised claim for benefits and arose under the Medicare Act).

Given the extensive case law, we have no difficulty concluding that the Reales' declaratory action to determine Humana's right to reimbursement is a claim that must proceed exclusively pursuant to § 405(g).  The law in both the traditional

Medicare[14] and Medicare Advantage context is settled: "[c]laims concerning reimbursement of secondary payments are 'inextricably intertwined' with claims for benefits" and therefore such reimbursement claims arise under the Medicare Act. See, e.g., Einhorn, 43 F. Supp. 3d at 1332 (quoting Potts, 897 F. Supp. 2d at 192). Because the Reales did not obtain a final decision from the Secretary, as required by § 405(g), their dispute is not subject to judicial review. Further, if their dispute were subject to judicial review, jurisdiction would lie exclusively in the federal courts.

### b. Organization Determinations and Grievances

The Reales next argue, based upon Giesse v. Secretary of the Department of Health & Human Services, 522 F.3d 697 (6th Cir. 2008), that what they denominate as the "binary nature of the administrative review process which distinguishes between '[organization determinations][15]' and 'grievances'" operates to exempt them from the strictures of the § 405(g) review process. According to the Reales, this dispute over Humana's reimbursement rights does not fit anywhere within the

---

[14] An even larger body of case law in the traditional Medicare context holds that § 405(g) is the sole avenue for judicial review of Medicare reimbursement disputes. See, e.g., Wilson ex rel. Estate of Wilson v. United States, 405 F.3d 1002 (Fed. Cir. 2005); Maresh v. Thompson, 114 Fed. App'x. 152 (5th Cir. 2004) (per curiam); Fanning v. United States, 346 F.3d 386 (3d Cir. 2003); Buckner v. Heckler, 804 F.2d 258 (4th Cir. 1986).

[15] The Reales—apparently adverting to Giesse—incorrectly use the outdated term "agency determinations," which appears in an older version of 42 C.F.R. § 422.566(b), in the place of "organization determinations."

definition of an organization determination contained in 42 C.F.R. § 422.566(b), so the dispute must instead be a grievance.[16] Since the review process for a grievance is more limited than that of an organization determination, the Reales claim this somehow exempts their dispute from the administrative review process completely and allows them to adjudicate their "grievance" in state court under state law. The Reales cite no authorities to support this proposition.

The Reales misapprehend the "organization determination" and "grievance" distinction explained in Giesse and the relevant regulations. Humana's reimbursement determination is an organization determination under 42 C.F.R § 422.566(b)(3) because it is a "refusal to . . . pay for services" where there is a primary payer. Cf. 42 C.F.R. § 422.564 (grievance procedures). However, even assuming for the sake of argument that this dispute is a grievance, this Court would not have subject-matter jurisdiction because, as explained above, this claim unequivocally arises under the Medicare Act and must proceed through the review process outlined

---

[16] Relatedly, the Reales and the dissent both argue that Humana never actually issued an organization determination because the letter Humana sent to the Reales did not meet the requirements set forth in the regulations. While there may be some merit to this argument, it does not convert the Reales' action to determine Humana's reimbursement rights into a state court claim. The Reales' reimbursement dispute remains a claim arising under the Medicare Act. Moreover, if an MAO fails to provide an enrollee with a timely organization determination in compliance with the relevant regulations, "this failure itself constitutes an adverse organization determination and may be appealed." 42 C.F.R. § 422.568(f). The EOCs also explain that if an organization determination is not timely received, the enrollee has the right to appeal.

in 42 U.S.C. §§ 405(g) and 405(h). As <u>Giesse</u> itself explains, "[s]ection 405(h) 'channels most, if not all, Medicare claims through this special review system.'" 522 F.3d at 702 (quoting <u>Shalala v. Illinois Council on Long Term Care</u>, 529 U.S. 1 (2000)). This is true of **both** organization determinations and grievances.

The difference explained by the court in <u>Giesse</u> between an organization determination and a grievance is the **extent of the appeals process**. An organization determination is subject to judicial review once an enrollee receives a final decision from the Secretary after exhausting all administrative appeals. <u>Id.</u> at 704. "Grievances, unlike organization determinations, do not have additional levels of review beyond the [MAO]. As there are no additional levels of review beyond the [MAO], there is no 'final decision' by the secretary that allows for judicial review" <u>Id.</u> (citations omitted). In other words, there is no judicial review of an MAO's grievance determination. This in no way suggests that judicial review of a grievance is available in state court under state law for a claim arising under the Medicare Act.

### c. Waiver

In a final effort to invoke the subject-matter jurisdiction of this Court over the claim made by them in this case, the Reales argue that Humana waived "its right" to require the claim to proceed through the Medicare appeals process by bringing an

action for recovery against Mrs. Reale in federal court.[17] This argument is also unavailing. As we have already explained, "[j]udicial review of claims arising under the Medicare Act is available only after the Secretary renders a 'final decision' on the claim, in the same manner as provided in 42 U.S.C. § 405(g)" Potts, 897 F. Supp. 2d at 191 (quoting Heckler, 466 U.S. at 605). The Reales, relying on the United States Supreme Court case Heckler, correctly state the two elements required for a final decision: "(1) a non-waivable requirement of presentation of any claim to the Secretary and (2) a requirement of exhaustion of administrative review, which the Secretary may waive." See also Potts, 897 F. Supp. at 192. The Reales then incorrectly assert, without citation to authority, that Humana is placed in the position of the Secretary and therefore (1) the Reales satisfied the non-waivable presentation requirement by presenting their claim to Humana and (2) Humana waived the exhaustion requirement by filing an action in federal court.

---

[17] The dissent similarly argues that Humana engaged in conduct that cleared the way for the court below to determine its reimbursement rights. Dissent at 13-14. This argument seems to be premised on a law review article's claim that MAOs are responsible for their own debt collections. Id. at 11-13 (quoting Jennifer Jordan, Is Medicare Advantage Entitled to Bring a Private Cause of Action Under the Medicare Secondary Payer Act?, 41 Wm. Mitchell L. Rev. 1408, 1414-16, 1439-40 (2015)). How this premise leads to the conclusion that a state court has jurisdiction over a Medicare reimbursement dispute is unclear, especially in light of the law review article's explanation that under both Medicare and Medicare Advantage "[s]hould any beneficiary disagree with a benefit determination, he must exhaust the administrative remedies provided." Jordan, supra, at 1413.

The Reales' assumption that Humana replaces the Secretary in the appeals process finds no support in any of the Medicare Part C statutes or regulations, nor is it supported by the detailed explanation of the process set forth in Humana's EOC. It defies logic to substitute Humana in the place of the Secretary as the arbiter of a dispute between Humana and its enrollee. To obtain federal judicial review, the Reales must present their claim to the Secretary, not to Humana, to render a final decision. See 42 U.S.C. § 1395w-22(g)(5).[18]

## II.    THE STATE LAW SUBROGATION CLAIM

The Reales argue that their action for a declaration of Humana's reimbursement rights is governed by Florida subrogation law, including Florida's collateral sources of indemnity statute, section 768.76, Florida Statutes (2012). The circuit court agreed. Because the clear language of the statute excludes benefits received under the Medicare Act, we find that the statute is inapplicable on its face. In addition, Florida subrogation law is expressly preempted by Part C's broad and unambiguous preemption provision, 42 U.S.C. § 1395w-26(b)(3). As the Reales' action cannot be brought under state law, "[t]his reinforces the Court's conclusion

---

[18] Although Humana does not take the place of the Secretary and may not waive the exhaustion requirement, its conduct has not necessarily been aboveboard. See supra note 16. At oral argument, counsel for Humana stated that if this Court finds there is a lack of subject-matter jurisdiction, Humana will reissue another determination letter, which will restart the time period for pursuing the administrative appeals process.

that [the Reales'] claims concerning [Humana's] reimbursement rights necessarily arise under the Medicare Act." See Potts, 897 F. Supp. 2d at 195.

### a. The Plain Language of Section 768.76

The court below found section 768.76, Florida Statutes (2012), applicable in determining Humana's right to reimbursement. Section 768.76(4) provides a formula for calculating the amount to be reimbursed when a collateral source payment is made under a right of subrogation or reimbursement:

> (4) A provider of collateral sources that has a right of subrogation or reimbursement that has complied with this section shall have a right of reimbursement from a claimant to whom it has provided collateral sources if such claimant has recovered all or part of such collateral sources from a tortfeasor. **Such provider's right of reimbursement shall be limited to the actual amount of collateral sources recovered by the claimant from a tortfeasor, minus its pro rata share of costs and attorney's fees incurred by the claimant in recovering such collateral sources from the tortfeasor.** In determining the provider's pro rata share of those costs and attorney's fees, the provider shall have deducted from its recovery a percentage amount equal to the percentage of the judgment or settlement which is for costs and attorney's fees.

(emphasis added). Relying on this formula, the court calculated Humana's reimbursement amount to be $3,685.03[19] instead of the full $19,155.41 Humana requested in its written letter to the Reales' counsel.

---

[19] See supra note 2.

The lower court's finding flies in the face of the plain language of the statute, which expressly excludes consideration of Medicare benefits as a collateral source in two separate provisions:

> (a) "Collateral sources" means any payments made to the claimant, or made on the claimant's behalf, by or pursuant to:

> 1. The United States Social Security Act, **except Title XVIII** and Title XIX; any federal, state, or local income disability act; or any other public programs providing medical expenses, disability payments, or other similar benefits, except those prohibited by federal law and those expressly excluded by law as collateral sources.

§ 768.76(2)(a)(1), Fla. Stat., (emphasis added).

> (b) Notwithstanding any other provision of this section, **benefits received under Medicare**, or any other federal program providing for a Federal Government lien on or right of reimbursement from the plaintiff's recovery, the Workers' Compensation Law, the Medicaid program of Title XIX of the Social Security Act or from any medical services program administered by the Department of Health **shall not be considered a collateral source**.

§ 768.76(2)(b), Fla. Stat., (emphasis added).

The Reales completely ignore section 768.76(2)(a)(1) and argue that section 768.76(2)(b) does not apply because Humana did not provide "Medicare conditional benefits," and "Humana is not Medicare." These arguments cannot be harmonized with the plain language of the statute. As explained above, Humana is a Medicare Advantage organization that provides **Medicare benefits** to enrollees in its Medicare

25

Advantage plans.  See 42 U.S.C. § 1395w-21(a).  The benefits paid on behalf of the Reales are indisputably "benefits received under Medicare[.]"  The plain language of § 768.76(2)(b) makes clear that such benefits "shall not be considered a collateral source."  Further, Humana's payments are expressly excluded under section 768.76(2)(a)(1) because they are payments made pursuant to Part C **of Title XVIII** of the Social Security Act.  The circuit court erred in finding section 768.76 applicable to determine the extent of Humana's reimbursement rights.

### b.  Express Preemption

The court below found that "Florida Subrogation Law, including the provisions of Florida Statute § 768.76, is applicable to determine the extent of Defendant Humana's right to reimbursement from the Reale settlement proceeds."  To the extent that "Florida Subrogation Law" apart from section 768.76 may be applicable to determine Humana's right to reimbursement, it is preempted by the broad, express preemption clause in Part C of the Medicare Act:

> (3) Relation to State laws
>
> The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part.

42 U.S.C. § 1395w-26(b)(3); see also 42 C.F.R. § 422.402; Potts, 897 F. Supp. 2d at 195 (finding New York anti-subrogation law preempted by 42 U.S.C. § 1395w-

26(b)(3)); cf. Smith v. Travelers Indem. Co., 763 F. Supp. 554 (M.D. Fla. 1989) (finding that an older version of Florida's collateral source statute, section 627.7372, Florida Statutes (1987), was preempted by section 1395y(b)(1) of the Medicare Act).

When federal law contains an express preemption clause, our task is to "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." Chamber of Commerce of U.S. v. Whiting, 131 S. Ct. 1968, 1977 (2011) (quoting CSX Transp., Inc. v. Easterwood, 507 U.S. 658 (1993)). "[W]hen Congress has made its intent known through explicit statutory language, the courts' task is an easy one." English v. Gen. Elec. Co., 496 U.S. 72 (U.S. 1990). This is the case here. Part C's preemption provision is clear and unambiguous: the standards established under Part C supersede any state law or regulation, with very few exceptions, none of which apply here.

In Potts, the court explained that "[f]or the purposes of the preemption provision, a standard is a statutory provision or a regulation promulgated under the [Medicare Act] and published in the Code of Federal Regulations." 897 F. Supp. 2d at 195 (quoting New York City Health & Hosps. Corp. v. WellCare of New York, Inc., 801 F. Supp. 2d 126, 140 (S.D.N.Y. 2011)). "Here, the federal statute contains extensive provisions with respect to reimbursement rights of MA organizations in the secondary payer context." Id. at 196. In addition, the Part C regulations

27

eliminate all doubt that the standards in Part C govern MAO reimbursement rights, preempting any state law affecting such rights:

> (f) MSP rules and State laws. Consistent with § 422.402 concerning the Federal preemption of State law, the rules established under this section supersede any State laws, regulations, contract requirements, or other standards that would otherwise apply to MA plans. A State cannot take away an MA organization's right under Federal law and the MSP regulations to bill, or to authorize providers and suppliers to bill, for services for which Medicare is not the primary payer. The MA organization will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter.

42 C.F.R. § 422.108(f); see also Potts, 897 F. Supp. 2d at 195. Therefore, because the explicit statutory language of Part C's preemption provision preempts any state law with respect to an MAO's reimbursement rights, the circuit court erred in determining the extent of Humana's reimbursement pursuant to Florida subrogation law.

## CONCLUSION

For the foregoing reasons, we hold that the circuit court erred in its finding of subject-matter jurisdiction and its determination of Humana's reimbursement rights pursuant to Florida subrogation law, including Florida's collateral sources of indemnity statute. We vacate the judgment below and reverse and remand with instructions to dismiss the complaint for lack of jurisdiction.

ROTHENBERG, J., concurs.

SALTER, J. (concurring in part, dissenting in part).

## I.     <u>Concurrence Regarding the Collateral Source Statute</u>

I concur with that portion of the majority's opinion holding that the Florida collateral source statute, section 768.76, Florida Statutes (2012), expressly excludes the claim raised by Mr. and Mrs. Reale. Section 768.76(2)(b) defines "collateral sources," those subject to the provisions of the statute, as excluding "benefits received under Medicare, or any other federal program providing for a Federal Government lien on or right of reimbursement from the plaintiff's recovery . . . ." Although there are important differences between the federal Department of Health and Human Services' administration of Parts A and B Medicare, and the manner in which Humana Medical Plan, Inc. ("Humana"), and other private, for-profit Medicare Advantage Organizations ("MAOs") operate under Part C of Medicare, "Medicare Advantage is merely an alternative to traditional Medicare Parts A and B. It is still Medicare, governed by the Medicare Act and funded through the Medicare Trust Fund." Jennifer Jordan, <u>Is Medicare Advantage Entitled to Bring a Private Cause of Action Under the Medicare Secondary Payer Act?</u>, 41 Wm. Mitchell L. Rev. 1408, 1409 (2015) (footnotes omitted).

The exclusion in section 768.76(2) applies to the MAO-paid benefits at issue in the present case, and that conclusion requires a reversal of the final judgment and remand to the trial court.

However, Humana's status as a non-governmental, for-profit entity permits it to make private business choices regarding its remedies (unlike the federal agencies administering Parts A and B of Medicare). In the present case, I conclude that the financial and business decisions concededly made by Humana regarding the Reales' case should control the further proceedings on remand following our reversal of the judgment below.

## II.    Dissent Regarding Circuit Court Jurisdiction

Given the unusual record before us and the additional authority provided by Humana itself, I respectfully dissent from the majority's conclusion that reversal and remand must be accompanied by a directive from this Court to dismiss the Reales' complaint for lack of jurisdiction. It may now be appropriate for the trial court to dismiss Humana as a party on remand, but the Reales also sought declaratory relief regarding, and recovery of, the funds in their attorney's trust account.

The Reales are in their sixth year of attempting to resolve a common legal problem that should have a "just, speedy, and inexpensive"[20] resolution. Their common legal problem became, inadvertently, a case study in the relationships

---

[20] Fla. R. Civ. P. 1.010(a).

31

between federal and state courts in a subcategory of Medicare "Secondary Payer" disputes. The question before the trial court, and now us, is how a for-profit, Florida-licensed MAO—the appellant, Humana—and its enrolled member (Mrs. Reale) may proceed when they disagree regarding Humana's rights of reimbursement from the enrolled member's personal injury settlement proceeds.

If Humana had issued an "organization determination"[21] as provided by federal regulation, if Humana had timely advised the Reales of their remedies to dispute such a determination, if Humana had not filed a federal lawsuit against the Reales before the state court lawsuit (and then dismissed that federal lawsuit), and if Humana had not obtained a federal judgment for <u>twice</u> the amount of its claimed reimbursement from the insurer which paid the settlement, I would have a different view of the case. As the record discloses, however, Humana proceeded in a different direction.

### A. Facts and Procedural History

#### 1. The Parties and the State Tort Suit

As an MAO, Humana administers a "Medicare Advantage health plan." It is a for-profit entity and a wholly-owned subsidiary of one of the nation's largest health insurers, Humana, Inc. MAOs are governed by federal statutes within Part C of Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395w-21 – 1395w-28 (2009).

---

[21] <u>See</u> 42 C.F.R. §§ 422.566 - .626 (2009).

Mary Reale sustained injuries from a fall at Hamptons West Condominium in January 2009. At the time, she was 86 years old and enrolled in Humana's "Gold Plus HMO H1036-054C" Medicare Advantage plan. Between January and April 2009, she obtained treatment for her injuries, including total hip replacement surgery and extensive rehabilitative therapy. Humana paid $19,155.41 for those and other medical charges arising from her injury. Later in 2009, Mrs. Reale and her husband (a co-appellee here), August Reale, filed a circuit court personal injury suit against the condominium association and two individuals alleged to have been responsible for her injury. The condominium association put its liability insurance carrier, Western Heritage Insurance Company ("Western Heritage"), on notice of the claim.

Western Heritage ultimately agreed to settle the Reales' claim against the condominium association for $115,000.00, with the two other defendants or their insurers contributing an additional $20,000.00. Counsel for the Reales in the personal injury lawsuit disclosed to Humana the prospects for settlement and requested information on the amounts paid by Humana for Mrs. Reale's medical treatment. There followed a series of letters between Humana "cost management" personnel (and, thereafter, Humana's attorneys) regarding the appropriate amount necessary to settle Humana's reimbursement claim. At no point did Humana issue any document identified as an "organization determination"[22] or advise the Reales

---

[22] 42 C.F.R. § 422.566.

and their counsel that the disagreement regarding the amount to be reimbursed was (a) final or (b) subject to an exclusive federal administrative process and specific appellate remedies.[23]

To the contrary, Humana's attorney's letter of April 26, 2010, asserted that Humana would "engage in an interactive process of negotiating resolution of this lien to avoid costly litigation." (Emphasis provided). Three days later, Humana's attorney advised that:

> Also, based on our conversation, it seems that a dispute is going to exist with respect to any recovered funds to the extent of the Plan's lien. As such, you have an obligation under the Florida Rules of Professional Conduct to hold the funds to which the Plan asserts an interest until we have resolved our dispute.
>
> After reviewing the law and consulting with your client, please advise of your client's position. While my client is willing to litigate this matter, it stands ready to discuss a resolution to the case.

(Emphasis provided).

### 2.    The First Humana Federal Suit

After a brief further exchange of emails, Humana filed a federal lawsuit against the Reales and their attorney on May 7, 2010, seeking declaratory relief, recovery of the reimbursement amount under the Medicare Secondary Payer Act (the "MSP Act"),[24] and reimbursement under Mrs. Reale's Gold Plus HMO plan as

---

[23]  42 C.F.R. § 422.576 (2009).

[24]  42 U.S.C. § 1395y(b) (2009), discussed in detail below.

34

a matter of "express contract, a contract implied in law or a contract implied in fact."[25]  The lawsuit named Mrs. Reale and her attorney ("as a stakeholder") as defendants.  To keep the four lawsuits relating to this dispute separate, I will identify the Reales' 2009 state court personal injury lawsuit as the "State Tort Suit," and Humana's 2010 federal lawsuit against Mrs. Reale and her attorney as the "First Humana Federal Suit."

### 3.     The State Settlement Proceeds Suit

Only four weeks after Humana filed the First Humana Federal Suit, the Reales filed the state court lawsuit that gave rise to the final judgment under review here: Reale v. Humana Med. Plan, Inc., No. 10-31906-CA-30 (Fla. 11th Cir. Ct. filed June 4, 2010).  I will refer to this third lawsuit in the series as the "State Settlement Proceeds Suit."  By this time, the Reales and their attorney had obtained an order in the State Tort Suit whereby the full amount claimed by Humana, $19,155.41, had been placed in the attorney's trust account pending resolution of the dispute, and the remaining settlement proceeds were disbursed to the Reales and their attorney.

In the State Settlement Proceeds Suit, the Reales sought a declaratory judgment regarding the respective interests of Mrs. Reale, her husband, her attorney, and Humana in the escrowed settlement funds.  The Reales asserted that Florida's

---

[25]  Complaint at 6, Humana Med. Plan, Inc. v. Reale, No. 10-21493-Civ-MGC (S.D. Fla. filed May 7, 2010), ECF No. 1.

collateral sources statute, section 768.76, Florida Statutes (2012), applied, providing apportionment of the settlement proceeds based on pro rata reductions for the legal fees incurred in obtaining those proceeds and for the ratio of the actual recovery to the total value of the case had it gone to trial.

In response to the State Settlement Proceeds Suit, Humana filed a motion to dismiss for lack of subject matter jurisdiction and under the "first to file" rule (based on the fact that the First Humana Federal Suit was filed a month before the State Settlement Proceeds Suit). The circuit court below then stayed the State Settlement Proceeds Suit in deference to the First Humana Federal Suit.

Subsequently, Humana's motion to dismiss was denied. At the circuit court hearing on Humana's motion to dismiss, however, Humana's counsel told the court that the State Settlement Proceeds Suit "is now moot due to the fact that Humana is no longer pursuing reimbursement from Mr. and Mrs. Reale personally."

Consistent with that representation, Humana voluntarily dismissed the First Humana Federal Suit against Mrs. Reale and her attorney in November 2011.[26] The filing and prosecution of that lawsuit by Humana against Mrs. Reale for over 18 months bears significance in the analysis, however, because it demonstrates that Humana never required or pursued any preliminary administrative remedies relating

---

[26] Notice of Voluntary Dismissal by Human Medical Plan, Inc., Humana Med. Plan, Inc. v. Reale, No. 10-21493-Civ-MGC (S.D. Fla. filed Nov. 9, 2011), ECF No. 59.

36

to its reimbursement dispute with Mrs. Reale. Instead, Humana pursued immediate recourse to litigation. After Humana voluntarily dismissed the First Humana Federal Suit, the circuit court lifted its stay of the State Settlement Proceeds Suit.

4.    The Second Humana Federal Suit and the
Western Heritage Appeal

Humana's change in strategy became clear when, in January 2012, Humana sued Western Heritage in federal court for failing and refusing to pay Humana's claimed reimbursement amount as "primary payer" of the settlement proceeds under 42 U.S.C. § 1395y(b)(2), the Medicare Secondary Payer ("MSP") Act. Humana also sought to recover <u>double</u> its reimbursement claim, i.e., $38,310.82, from Western Heritage as a remedy for non-payment by Western Heritage under section 1395y(b)(3).

Consistent with its change in strategy, Humana did not join the Reales or their attorney in this lawsuit (the "Second Humana Federal Suit"). Humana prevailed against Western Heritage on both of these claims. <u>Humana Med. Plan, Inc. v. W. Heritage Ins. Co.</u>, 94 F. Supp. 3d 1285 (S.D. Fla. 2015). Humana filed that opinion in this Court as additional authority promptly after it was issued. Western Heritage has appealed the final judgment against it,[27] but no stay has been entered in the federal appeal.

---

[27] <u>W. Heritage Ins. Co. v. Humana Med. Plan, Inc.</u>, No. 15-11436 (11th Cir. filed Apr. 2, 2015).

5.    <u>Final Judgment and Appeal in the State Settlement Proceeds Suit</u>

In the meantime, and notwithstanding Humana's decision to pursue Western Heritage instead of the Reales, Humana's answer and affirmative defenses filed in the State Settlement Proceeds Suit (after Humana had dismissed the First Humana Federal Suit) maintained that, among other matters, the Florida collateral sources statute was preempted by federal law; that the Reales were not entitled to relief because they had not exhausted their federal administrative remedies; that their claims had to be brought in federal court; and that Humana was entitled to the entire amount of its reimbursement claim, with no allowance for attorney's fees or costs, because Humana had engaged in a lawsuit to compel reimbursement.

The state trial court granted the Reales' motion for a final declaratory judgment, concluding that it had subject matter jurisdiction and that "Florida Subrogation Law, including the provisions of Florida Statute § 768.76, is applicable to determine the extent of Defendant Humana's right to reimbursement from the Reale settlement proceeds." The final declaratory judgment determined that (1) Mrs. Reale had recovered 33.75% of the full value of her claims, (2) Humana's claim for reimbursement should be reduced by applying the same ratio, (3) Mrs. Reale's recovery had been further reduced by the attorney's fees and costs incurred in obtaining the settlement, and paid by her from the proceeds, (4) Humana's claim for reimbursement should also bear a pro rata percentage of such attorney's fees and

costs, and (5) Humana's reimbursement after such adjustments would be $3,685.03 of the $19,155.41 advanced. This appeal followed.

To recap, Humana's otherwise straightforward reimbursement claim has included two federal lawsuits brought by Humana, and a resulting federal appeal, as well as proceedings in the two state court lawsuits and this appeal. The aggregate legal bills are obviously many multiples of the original reimbursement claim. The judicial system's objective of a "just, speedy, and inexpensive" determination of the dispute has not been achieved.

B.     **Analysis**

1.     Mootness

Though agreeing that the judgment below must be reversed because of the inapplicability of the Florida collateral sources statute, on remand I would direct the trial court to consider whether the State Settlement Proceeds Suit is moot as to Humana, based on Humana's counsel's declaration in open court that it would not pursue recovery against the Reales further and on Humana's complete recovery (and more) against Western Heritage on Humana's underlying reimbursement claim. The disposition of the $19,155.41 in the Reales' attorney's trust account deposited over five years ago would then be ripe for determination. That part of the controversy has not been concluded to the point that "a judicial determination can

39

have no actual effect." Philip J. Padovano, <u>Florida Appellate Practice</u> § 1.4 (2007 ed.) (citing <u>Godwin v. State</u>, 593 So. 2d 211 (Fla. 1992)).

### 2.     The MSP Provisions as Applied to an MAO

Humana argues that it is entitled to enforce the exclusive federal jurisdiction provision applicable to the review of governmental decisions under 42 U.S.C. § 405(g). But the decision initially cited for that proposition, <u>Heckler v. Ringer</u>, 466 U.S. 602 (1984), antedated the establishment of MAOs by many years. Humana has not addressed its special status as an MAO and its unusual actions in this case.

Unlike the Centers for Medicare & Medicaid Services ("CMS"), the governmental administrator of traditional Medicare on behalf of the Secretary of Health and Human Services, Humana is a for-profit, risk-taking entity that can (and does) pursue MSP Act reimbursement claims on its own. Humana and other MAOs retain the proceeds of those recoveries for their own account, as opposed to CMS (which obtains such reimbursements for return to the Medicare Trust Fund). A 2015 law review article explains this difference:

> Medicare is statutorily prohibited from making payments when there is a primary payer, with the exception of payments made when primary payment is not timely made, conditioned upon reimbursement should primary payment responsibility be determined. 42 U.S.C. § 1395w-22(a)(4) extends secondary payer status to Medicare Advantage by virtue of reference to payments made pursuant to 42 U.S.C. § 1395y(b)(2). But the statute does not incorporate any of the recovery provisions available at 42 U.S.C. § 1395y(b)(2)(B)(iii) or (iv) expressly granted to the United States. Instead, the statute provides that an MAO "may" charge the responsible party or a beneficiary who has received

payment for reimbursement of payments for which Medicare is prohibited from making or had made conditionally. It is interesting to note that this permission given to MAOs to bill for reimbursement appears discretionary, whereas traditional Medicare conditional payments made by the Secretary "shall be" conditioned on reimbursement. If Congress were truly concerned about the recovery of payments made from the capitated payments to MAOs, it could have easily required that an MAO bill the responsible party, but instead, it merely granted MAOs permission to do so.

42 C.F.R. § 422.108 specifically covers MSP procedures for MAOs. It states that CMS does not pay for services when Medicare is not primary and lays out responsibilities of MAOs to identify and coordinate benefits with primary payers, reemphasizing the idea that MAOs are making payments on behalf of CMS. Interestingly, subsection (b) states that the "MA organization *must*" identify primary payers and amounts owed, thereby demonstrating that Congress is capable of using mandatory language. Yet subsections (c), (d), and (e) employ discretionary language: "[an] MA organization *may* bill" for covered Medicare services. When used in such close proximity, one cannot help but infer that the word selection was intentional.

It stands to reason that the government can require its contractors to consistently coordinate benefits in the same manner as the traditional program so that all beneficiaries receive the same base-level benefits and exclusions. But federal funds are not in play with regard to the MAO recovery itself since such reimbursements are not returned to the Medicare Trust Fund. Part of the risk sharing is that MAOs are paid a fixed capitation rate, whether beneficiaries seek medical treatment or not, and whether MAOs collect from third parties or not. The manner and extent to which an MAO elects to pursue its third-party recoveries are business expenses that should have factored into its benchmarks when bidding to be an MAO. How MAOs conduct their ordinary course of business determines how much profit they can make contracting as an MAO and is not Congress's concern, so long as Medicare beneficiaries receive the guaranteed benefits provided by law. If the principles of Medicare Advantage were founded on the idea that private sector insurance companies can deliver health care benefits more efficiently than the federal government, one has to assume that

41

they are just as efficient and knowledgeable about recovering liens from responsible third parties.

. . .

Any payment made by Medicare in contravention to the MSP [Act] is by definition an overpayment, and no different from any other payment made by the U.S. government that should not have been made. While the MSP [Act] contains some very specific recovery rights, at all times they are overpayments subject to standard federal debt recovery laws. If a conditional payment reimbursement demand by CMS goes unanswered for 180 days, it must be referred to the Department of Treasury pursuant to the Debt Collection Improvement Act of 1996. If Treasury is unsuccessful in obtaining reimbursement, the claim is referred back to CMS or to the Department of Justice if it believes that litigation under the MSP [Act] would be successful in recovering the debt.

In contrast, MAOs are responsible for their own debt collections, as they do not have access to the Departments of Treasury or Justice. In practice, most MAOs utilize ordinary collection agencies allegedly specializing in health care recoveries. And like most collection agencies, they are unrelenting in their demands for payment with little regard to the legalities that give rise to the claim.

Jordan, supra at 1, 1414-16, 1439-40 (emphasis provided; footnotes

omitted).

As an entity responsible for its own debt collection, Humana may have

been free to file its own action against Mrs. Reale and her attorney without

issuing an organization determination, notifying Mrs. Reale of her appellate

remedies, or invoking federal administrative remedies. However, Humana's

election of a different remedy against a different party (Western Heritage),

and its announcement to the trial court below that Humana would not pursue

42

recovery against the Reales, cleared the way for the trial court to determine what part, if any, of the escrowed settlement funds should be released to the Reales.

### 3. Other MAO-Enrollee Reimbursement Cases

But for the extraordinary actions taken by Humana in the present case[28] I might reach a different result.[29] I reiterate that my analysis regarding the present case is based on the private, non-governmental business decisions permitted for MAOs in seeking reimbursement for their own account rather than for reimbursement to the Medicare Trust Account, and on the unusual record presented to us.

## III. Conclusion

---

[28] Humana's strategy in taking those actions, as a private entity entitled to pursue its own collection strategy, makes obvious business sense. Humana has chosen not to pursue its own enrollee member (now over 90 years old) for reimbursement, electing instead to pursue a double-the-claim recovery against an insurer as primary payer. Humana also established its right to a private right of action and double recovery against primary payers (rather than its enrollees) under the MSP Act in In re Avandia Mktg., Sales Practices & Prod. Liab. Litig., 685 F. 3d 353 (3d Cir. 2012).

[29] The jurisdictional analysis in a more typical MAO reimbursement dispute is detailed in Einhorn v. CarePlus Health Plans, Inc., 43 F. Supp. 3d 1329 (S.D. Fla. 2014). In that case, however, the MAO did not start a federal lawsuit to collect reimbursement from its enrollee, voluntarily dismiss that lawsuit, and abandon the claim against the enrollee in favor of a double recovery in a separate MSP Act lawsuit against a primary payer, leaving escrowed funds in a resulting limbo.

I concur with the majority's determination that section 768.76, Florida Statutes (2012), is inapplicable to Humana's claim for reimbursement against the Reales, and that the final judgment must be reversed and remanded.[30] I respectfully dissent, however, with regard to the actions to be taken on remand. The trial court should be permitted to consider and determine whether Humana's dismissal of its first federal lawsuit, its representations to the trial court and the Reales, and its judgment against Western Heritage, warrant the dismissal of Humana as a party in the state action for declaratory relief, and the trial court should adjudicate the rights of the Reales, if any, to the settlement funds held these many years in their attorney's trust account.

---

[30] I also concur with my colleagues' reference, authored originally by a number of federal appellate judges, to the Medicare Act as "one of the most completely impenetrable texts within the human experience." (Majority op. at 6, citing Parra v. PacifiCare of Arizona, Inc., 715 F.3d 1146, 1149 (9th Cir. 2013) (quoting Cooper Univ. Hosp. v. Sebelius, 636 F.3d 44, 45 (3d Cir. 2010)).